**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5064-11T2

JONG S. HONG,

 Plaintiff-Respondent,

and

DANIEL KIM,

 Plaintiff,

v.

SOON H. KIM and
YEO PYEONG YUN,

 Defendants-Appellants.

Submitted March 22, 2017 — Decided August 17, 2017

Before Judges Alvarez, Accurso, and Lisa.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8580-09.

Kimm Law Firm, attorneys for appellants (Michael S. Kimm, Sung H. Jang, and Adam Garcia, on the briefs).

Sukjin Henry Cho, attorney for respondent.

PER CURIAM

This appeal, filed on June 11, 2012, was stayed for years as a result of plaintiff Jong Sul Hong and defendant Soon Hee Kim filing consecutive bankruptcy petitions. Soon Hee's[1] bankruptcy discharged the $270,000 judgment that Hong obtained after a fourteen-day bench trial. We therefore do not reach the issues Soon Hee raises on appeal with regard to the judgment, as they are moot, and address only her argument, and that of her husband and co-defendant Yeo Pyeong Yun,[2] that their counterclaims were improperly dismissed. We agree, and remand for trial on Soon Hee's counterclaim for malicious prosecution, both Soon Hee and Yun's counterclaim for breach of fiduciary duty, and Yun's counterclaim for $75,000. The cause of action based on an alleged violation of the Fair Debt Collection Act, 15 U.S.C.A. § 1692a and § 1692e, however, is not reinstated.

Every witness except Hong required the services of an interpreter. The halts and interruptions natural to such a trial were exacerbated by the judge's frequent interjections, interruptions, and commentary. Instead of aiding in clarifying the testimony, the trial judge's questioning added to the

---

[1] We refer to Soon Hee Kim in this fashion to avoid confusion.

[2] We will refer to Yeo Pyeong Yun as Yun to avoid confusion, and refer to Soon Hee and Yun collectively as defendants.

A-5064-11T2

confusion.  This confusion was not alleviated by the judge's 104-page written opinion.

Hong, Soon Hee, and Yun were involved in lending circles, known as "kehs," rooted in Korean culture.  Members of a keh pool their funds, and pay out principal and interest on a rotating basis.[3]  Kehs date back to farming villages in Korea in the sixteenth century.  Lan Cao, Looking at Communities and Markets, 74 Notre Dame L. Rev. 841, 874-84 (1999).

From the trial testimony, we discern that Hong managed at least two kehs, one formed in 2006, the other in 2008, in which Soon Hee participated.  As the administrator of the kehs, Hong paid no interest, and she claimed not to have kept any of the interest paid into them.  At times, however, members would be paid the keh purse and relend the money to her.  Although records of the kehs were demanded during discovery, none were produced. Hong testified that she kept records for the 2006 keh in a notebook, which she lost.  Some Xeroxed pages, allegedly from this lost notebook, were introduced at trial. Hong also claimed records

---

[3] For example, in a twelve-month keh with twelve positions, requiring a $500 monthly principal payment, a monthly purse of $6000 is taken in the order designated by the keh manager.  By the end of the twelve-month period, each position would have taken a $6000 pot while each member would have paid a minimum of $6000 into the keh for each position, plus interest.  The positions would be paid or receive more or less interest for the duration of the keh depending on their place in the rotation order.

A-5064-11T2

regarding the 2008 keh were in the possession of an attorney no longer involved in the case.

The monthly 2006 keh payment amount was $1500, and the monthly interest was $300. Due to the number of the participants in the keh, a total of $2.4 million in purses were paid. The 2008 keh required monthly payments of $2500, from each of forty positions, and interest of $500 on a pot totaling $100,000. The total purse came to $4 million. Soon Hee held multiple positions in both the 2006 and 2008 kehs. Yun had four positions in the 2006 keh, and none in the 2008 keh.

We need not repeat in detail the at-times garbled history of payments, checks, and other financial transactions, in addition to the kehs, between Hong and Soon Hee including loans in both directions, and Soon Hee's unexplained payment to at least one of Hong's relatives. Suffice it to say that Soon Hee gave certain blank and undated checks to Hong, who in turn gave them to Kim, because Hong owed him money. Kim never participated in any keh managed by Hong, but had lent her various sums totaling $205,000. From the written documents introduced during the trial, we assume few written records were generated as a result of these transactions.

Kim did not know that Hong had been holding Soon Hee's checks, and did not know when they were delivered to Hong. He deposited

4

them because Hong advised him that it was "okay" to do so. Kim claimed that he warned Soon Hee that he was going to deposit the checks, and "there wasn't any response by her." On August 11, 2009, while together, Hong and Kim deposited the five checks. Kim filled in the dates; all were dishonored.

After the checks were dishonored, Hong contacted her attorney. It is not clear from the record if counsel was aware of the history between the parties, either with regard to the kehs Hong managed, or the fact the checks were initially issued with the dates and payee in blank. Soon Hee testified the checks were not to be deposited without her explicit consent.

Hong's attorney wrote to Soon Hee, putting her on notice that the issuance of the checks was a third-degree crime, and that if Soon Hee did not forward certified or bank checks in the amounts of $120,000 and $166,582 within ten days, the matter would be referred to the Bergen County Prosecutor. Hong, while testifying, seemed to acknowledge that the letter was inaccurate because Soon Hee had not filled in the dates on the checks.

On September 21, 2009, Hong and Kim filed a civil complaint against Soon Hee and Yun, alleging that Soon Hee sought "a short-term, interest free loan in the amount of $300,000" from both plaintiffs. The complaint states:

6. Based on the request by [d]efendant [Soon Hee], [p]laintiffs did then loan to [Soon Hee] the total sum of $287,040.00, of which $150,540.00 came from monies then possessed by . . . Hong, $120,000 came from monies then possessed by . . . Kim, and $16,500.00 came in the form of "cash advances" on credit cards maintained by . . . Hong.

7. Under the terms of the parties' agreement, the $287,040.00 which [d]efendant [Soon Hee] borrowed from . . . Hong and from . . . Kim was to be repaid in full within thirty (30) days of the date thereof. Based on the very short term of the loan and the long standing relationship of the parties, the parties agreed that the loan would not accrue interest, fees, or other charges during that thirty day term.

Additionally, the complaint stated that "[w]ithout the knowledge, consent, or permission of the [p]laintiffs," Soon Hee used the money to purchase a retail store, and that she refused to pay back the loan under the original terms of the agreement.

According to the complaint, on an unspecified date, the parties renegotiated the loan terms. Soon Hee was to pay the principal in a lump sum within two years, and to pay $5400 per month in interest until that time. Soon Hee paid the interest from September 2007 until February 2009, when she asked for and received an additional $10,000 loan under the same terms.

The complaint also alleged: "[a]s evidence of defendants' indebtedness to Plaintiffs on the said loan, on or about August 11, 2009, defendant [Soon Hee] wrote a series of checks to the

[p]laintiffs[.]" The dishonored checks were described as follows: check number 1474 "was made payable to . . . Kim in the amount of $60,000"; check number 1475 "was made payable to . . . Kim in the amount of $60,000"; check number 1487 "was made payable to . . . Hong in the amount of $50,000"; check number 1488 "was made payable to . . . Hong in the amount of $50,000"; and check number 1489 "was made payable to . . . Hong in the amount of $66,582.00."

At trial, Hong admitted that many of the allegations in the complaint, reiterated in her interrogatory responses, were incorrect. For example, she conceded that Soon Hee had not transferred her interest in the business or other real estate solely to render herself judgment proof; that plaintiffs sought repayment of more than just a single loan; that there was never an agreement to repay the loan within thirty days; that Kim had never loaned Soon Hee any money; and that Hong did not make the loans from her own funds.[4]

Extensive testimony was elicited from Hong with regard to her management of the kehs. She acknowledged that she had "difficulty" with them. Hong had comingled the money from the two kehs by

---

[4] Kim also acknowledged that "everything [was] wrong" in the allegations in the complaint. He never lent Soon Hee or Yun money directly, nor had he received any checks from Soon Hee. In addition, "almost all" of the original answers he had provided to interrogatories through his former counsel were "incorrect."

using funds from one to meet the obligations of the other. She agreed that one person from the 2006 keh had not been paid, although she insisted that Yun had "received everything in full," but had nothing in writing to establish that.

From 2008 to 2009, Hong claimed she was approximately $800,000 to $900,000 in debt, including the $300,000 Soon Hee allegedly owed her. However, she kept no notes and had no writing to evidence the debts, and was unsure whether the debts were cash debts.

During Soon Hee's testimony as a hostile witness in Hong's case, she denied borrowing "even a single dollar" from Hong. She claimed that she had participated in seven or eight of Hong's kehs, and that for more than ten years they had been passing money back and forth without maintaining records. At times Soon Hee received money from Hong, which Hong had borrowed from others, and Soon Hee loaned money from her keh purses to third parties through Hong. All of the transactions, Soon Hee claimed, were supposed to be recorded in Hong's lost notebook.

Soon Hee said that it was impossible to separate the funds generated through the kehs from the loans. Although she owed $10,000 on the 2008 keh, she in turn was owed money from the 2006 keh, and Yun continued to be owed $75,000 from that keh to be paid through her. She had lent Hong money at no interest, which had

not been repaid.  Soon Hee agreed she had signed all five checks in blank and had written out other checks payable to plaintiff's aunts.

Soon Hee claimed it was Hong's practice in managing the kehs to hold personal checks in escrow and not use them until the draws were replenished.  When Hong's last keh was breaking up, Hong needed the checks to show to others in addition to having financial needs herself.  Soon Hee had agreed that when the keh accountings were completed, she and Hong would do the necessary calculations to determine precisely what was owed to whom.  Because Soon Hee trusted Hong, she wrote the checks in Hong's presence, to be held in escrow pending further keh transactions.  Hong allowed Soon Hee to charge heavily on her credit cards.

Soon Hee said that only Hong knew the identity of all the members of the keh.  She also testified that Hong would occasionally take two positions in her own keh, pay no interest, and then lend money privately to other keh members.

The precise nature of the multi-faceted financial relationship between the parties was unclear.  Hong tape-recorded some conversations with Soon Hee, and the transcriptions, prepared by an acquaintance, were proffered and accepted as evidence. During those conversations, Hong appeared to agree that at least

some of the checks Soon Hee gave her represented Soon Hee's obligations as a participant in the kehs.

Yun testified that he did not participate in the 2005 or 2008 kehs, but he had four spots in the 2006 keh: August and September 2007, and March and April 2009. Yun received his payments through Soon Hee and otherwise "didn't get involved." His purse was $127,000, but he did not know if it had been paid in cash or checks; he believed that he was still owed $10,000, although it was unclear from which keh year. He testified that, at the time of trial, he had not received the $75,600 he was owed from the March and April 2009 purses in the 2006 keh.

From March to August 2009, Yun "tried very hard to settle the money problems" between his wife and Hong but was unable to do so. He attempted to negotiate a resolution of the problem between Hong and Soon Hee, but they were not able to agree on a price. He fired Hong, who had worked in his store, after only two months. He found her claim that Soon Hee owed her $600,000, and repeated requests for a $100,000 loan, troublesome.

On September 23, 2009, plaintiffs filed criminal charges against Soon Hee with the Fort Lee police. At trial, Hong said she went to the police after she heard nothing from Soon Hee in response to her attorney's demand letter. She said: "It was my

knowledge that once the checks were deposited and was bounced, returned, that . . . the criminal complaint may be filed."

Hong showed the checks to the police, who did not ask any questions about them. She did not tell them that it was her and Kim, not Soon Hee, who dated the checks and wrote the payee names, or that the money for the loans had come from others. Plaintiff said she "told the story" to her attorney and that he wrote documents she referred to as affidavits.

Hong's affidavit stated that "2 years and few months ago" she had loaned Soon Hee "around $300,000" in a "short term loan"; that Soon Hee "gave me 5 checks for the money I have given it to her;" that Soon Hee "refused" to pay back the money; that her attorney had sent out a letter and received no response; and that she had deposited three of the checks on August 11, 2009, and they were returned.

In a handwritten affidavit, Kim stated that he had "received 2 checks at $60,000 each," that he deposited them on August 11, 2009, and the checks were returned for insufficient funds. He stated that a letter had been sent to Soon Hee on September 1 asking her "to make the checks good but no response."

Kim's affidavit did not identify who gave him the checks. He testified at trial that the police never asked how he came into

11

possession of the checks or whether he had filled in the date and payee, and he never told the police that he had done so.

After filing the charges, Hong spoke to someone at the prosecutor's office and went to the Superior Court about the case more than five times without telling anyone that the information in the affidavit was incorrect. When asked if she was concerned about the accuracy of her statement to the police, Hong responded: "I did it with just the purpose of getting the money."

Kim said he had filed the criminal complaint only to ensure that he received his money; he did not want anyone to go to jail. If Soon Hee had called him to "make the resolution to make the check good," he would have withdrawn it.

Detective Philip Ross of the Fort Lee Police Department arrested Soon Hee on November 19, 2009, on five charges of the indictable offense of passing bad checks in violation of N.J.S.A. 2C:21-5B. She surrendered in police headquarters at 9:40 a.m. on November 19, 2009, with her attorney. Soon Hee was fingerprinted, screened as a prisoner, pat-searched, photographed, and held pending arraignment. She was released after arraignment at 12:30 p.m. that day. Her passport was seized as a condition of her release.

Ross said the arrests were based on the affidavits, copies of the returned checks, and the complaints filed by Hong and Kim.

Ross was unaware that the checks had been given to plaintiff in March 2009, or that when delivered, they were undated. If he had known, he would not have taken any police action. The criminal complaint against Soon Hee was administratively dismissed on July 15, 2010, eight months after her arrest.

When the matter was being processed through the criminal court, Soon Hee "was really panicking[.]" She paid an attorney $5000 and filed an ethics complaint against Hong's attorneys who had sent the demand letters and filed the civil complaint. In her written statement to the ethics committee, Soon Hee stated as follows:

> In April 2009, all five checks were give[n] by me to Ms. Jongsul Hong and she and I agreed that she will hold those checks until I repay her loan. Ms. Hong loaned money to me, which is current, for which those checks were to be held by her, and never to be cashed or deposited or given to any third-party.
>
> Ms. Hong and I have had [a] personal loan relationship since three years ago and I give her interest monthly. The check was not to be used by anyone and it was not my payment for anything. It was only "to hold."
>
> . . . .
>
> I never issued those checks to "Daniel Kim" and the check[s] were blank and they were not supposed to be deposited. Everyone knew that I did not have the funds and so even the dates were not written in.

A-5064-11T2

The trial judge rejected defendant's contention that Hong's role as a keh organizer and loan facilitator imposed a fiduciary duty upon her. He instead found that Soon Hee owed $270,000 to Hong, in addition to $16,582 for the use of Hong's credit card. He further found that Hong was "gullible and naïve," had borrowed money "from various third parties" at Soon Hee's request, and then loaned a minimum of $270,000 to Soon Hee to "put the loan money into an account so defendant could obtain a loan," believing the money would be returned. He added:

> [t]he Court still has some difficulty which does leave questions of credibility that the plaintiff was only seeking to collect $270,000 representing the balance of the loan of $310,000 since $40,000 has been repaid though no records have been presented by the plaintiff as to this payment of $40,000 where the Court had previously indicated that these payments would have corroborated the agreement between the parties that this was a loan and it was to be repaid and even possibly address the issue of interest. (Do the pleadings and subsequent arguments of the defendant claiming loan sharking acknowledge that they were paying interest yet it was usurious was their argument though little testimony involved on the issue of interest on the loan except to say it was the same interest as the keh being 2% a month though there was no testimony as to how many payments were made.)

The judge observed that the checks Soon Hee had signed were "critical" to his determination. If, as Soon Hee had testified, "this is just the same as writing an IOU on a piece of paper and

14 A-5064-11T2

is worthless," then "[w]hy write this indebtedness on your checking account?" He said: "[i]t would appear to be acknowledged by all the parties that giving a personal check to a lender is an acknowledgement of the debt being common practice. The Court questions what are you supposed to do with these checks if not cash them or negotiate them." Furthermore, Soon Hee acknowledged the debt in letters she wrote to the Bergen County Ethics Committee regarding Hong's attorneys.

As well as rejecting the notion that Hong had a fiduciary duty, the court also dismissed defendants' counterclaim regarding violations of the Fair Debt Collection Practices Act. The judge concluded that Hong was not a debt collector as defined by that legislation: "a person who regularly collects or attempts to collect directly or indirectly debts owed or due or asserted to be owed or due another." The court said that "plaintiffs are not vicariously liable for their prior counsel['s] letter to the defendant and any allegations with regards to ethics violations have already been dismissed by the Ethics Committee."

Furthermore, the court dismissed defendants' claim of malicious prosecution because they had failed to prove that Hong's complaint to the police department "was done with malice." The fact that Hong acted on the advice of counsel "show[ed] good faith and is a valid affirmative defense." The judge opined that there

15

were no damages other than attorney fees because, although defendant "was briefly detained at the Fort Lee Police Department," and had her passport confiscated, "she never testified that this caused her any inconvenience let alone any emotional distress."

Finally, the court said:

> There was no counterclaim for any monies that the plaintiff [] Hong may owe the defendants [], there being no claim for a set off against the indebtedness found to be owed by the [Soon Hee] to the plaintiff [] Hong, therefore the Court will not nor can it consider any claims of the defendant which it may have referenced as set offs throughout this opinion.

I.

In an appeal from a bench trial, "[t]he scope of appellate review of a trial court's fact-finding function is limited." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411 (1998)). The factual findings and legal conclusions of the trial judge are not disturbed unless the reviewing court is "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." In re Trust Created by Agreement Dated Dec. 20, 1961, ex rel Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We owe no deference, however, to a trial court's

16

interpretation of the law and the legal consequences that flow from established facts. <u>Gallenthin Realty Dev., Inc. v. Borough of Paulsboro</u>, 191 <u>N.J.</u> 344, 358 (2007); <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 <u>N.J.</u> 366, 378 (1995).

## II.

The issue of whether a duty should be imposed is a question of law. It requires evaluation of the parties' relationship, the nature of the risk involved, and the related public interest. <u>Frederick v. Smith</u>, 416 <u>N.J. Super.</u> 594, 599 (App. Div. 2010), <u>certif. denied</u>, 205 <u>N.J.</u> 317 (2011). No deference is owed to the trial court's legal conclusion on the issue. <u>Ibid.</u>

A fiduciary relationship arises "when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." <u>F.G. v. MacDonell</u>, 150 <u>N.J.</u> 550, 563 (1997). It occurs when the parties' relationship involves a level of trust and confidence and one party is in a dominant or superior position. <u>Ibid.</u>

The trial court here said that it found no fiduciary relationship existed between the parties because their relationship involved "a straightforward loan between [] Hong to [Soon Hee]." (Da2271). Debtor-creditor relationships generally are not considered to be fiduciary because of their essentially

adversarial nature.  <u>N.J. Econ. Dev. Auth. v. Pavonia Rest.</u>, 319 <u>N.J. Super.</u> 435, 446 (App. Div. 1998).

But the court's finding that the matter involved a straightforward loan was not supported by the evidence.  This was the basis for the judge's dismissal of defendants' counterclaim that Hong had breached a fiduciary duty.  There was nothing straightforward about Hong's constantly shifting testimony regarding the circumstances of the loans.  She herself acknowledged a long-term financial relationship with Soon Hee and her management of the kehs in which Soon Hee and Yun were participants.  The judge's factual findings were thus inconsistent with the reasonably credible evidence in the record, and were the sole support for his legal conclusion that the parties had a simple lender-borrower relationship and that therefore no fiduciary relationship existed.

In addition, it was undisputed that Hong served as Soon Hee and her husband's intermediary for hundreds of thousands of dollars in keh money that she collected, paid out to them in purses, and loaned for profit to others.  In her role as the keh organizer, Hong collected and distributed enormous sums of money.  She admittedly profited from the no-interest loans she received in that capacity and then re-lent to others with interest.

Soon Hee and Yun, and the other keh participants had to trust that Hong would distribute their money in accordance with the rules of the particular keh. Hong alone knew the identity of the dozens of keh participants, the order in which payouts were to be made, and funds distributed to the participants —— as well as to any individuals who were making loans separately from keh payments.

Hong may well have owed defendants the duty of loyalty and the duty to exercise reasonable skill and care that are encompassed within a fiduciary's obligations. See F.G. v. MacDonell, supra, 150 N.J. at 564. The state of the record, however, permits no definitive conclusion on this point. These duties include a fiduciary obligation to maintain records regarding distribution of keh funds.

Despite Hong's testimony to the contrary, her statements in the April 2, 2009 telephone recordings she moved into evidence demonstrated that at least some of the obligations represented by the five checks were incurred as a regular part of the keh transactions. Despite this evidence, Hong did not explain why some of the check amounts coincided with Soon Hee's portion of the keh purses. The judge did not address these questions in his decision.

Soon Hee testified repeatedly that the records for the 2008 keh, and Hong's lost notebook containing the record of all of the

A-5064-11T2

loan transactions, would support her contention that the loan transactions went both ways, and that Hong also owed her money. The only evidence to the contrary was Hong's self-serving insistence at trial that the loans were entirely separate from the keh. In fact, it was not until December 2010, months after defendants made the discovery request regarding Hong's financial records, that Hong first claimed she had lost the notebook that contained records of her loan transactions.

The discovery violations were not remedied or resolved before trial. Soon Hee and Yun may have been entitled to invoke the spoliation inference, a remedy for a litigant who becomes aware during litigation that evidence has been destroyed or concealed. Rosenblit v. Zimmerman, 166 N.J. 391, 401-02 (2001). The inference serves to level the playing field by allowing a factfinder to presume that the lost or concealed evidence would have been unfavorable to the spoliator. Ibid. When the issues were raised, the judge did "not concur with defendants analysis/arguments that by not providing books and records of these kehs that the aforementioned claims made by the defendant concerning monies owed to them by the plaintiff must be true." Nor did the trial judge's decision mention Hong's assertion that the 2008 keh records allegedly remained in the possession of Hong's other attorney.

A-5064-11T2

In addition, without support in the record, the court found that defendants also had the notebook. Soon Hee had merely testified that she had seen Hong's notebook on multiple occasions. Thus defendants are correct that the trial court erred when it rejected out of hand their claim that Hong was in a fiduciary relationship with them, and when he did not draw an adverse inference from Hong's failure to produce documents that were critical to the parties' claims. The judge's conclusions were not supported by the record. Accordingly, we reinstate the counterclaim and remand the matter for a new trial on that issue. Should defendants wish to do so, they have the right to file a new motion pretrial regarding spoliation. Our decision on these issues results from the judge's reconstruction of the record, and is not intended to dictate the outcome.

## III.

In his decision on the parties' cross-motions for summary judgment, another judge dismissed Yun's counterclaim for breach of fiduciary duty. That judge mistakenly believed that only Yun had asserted such a claim. In fact, both he and Soon Hee asserted the counterclaim in their original answer. The judge also mistakenly found that Yun had not been a member of any keh, and that if he had participated, it was only "indirectly" through Soon Hee.

21

To the extent that defendants' breach of fiduciary duty counterclaim was deemed dismissed by that pretrial judge's order, it is hereby reversed. Yun was a member of the 2006 keh. The remand for a retrial on the extent of Hong's fiduciary duty is on the counterclaim made by both defendants.

## IV.

Yun also contends that he is entitled to damages for Hong's mismanagement of the 2006 keh in the amount he paid into the keh, $75,000. We reverse the dismissal of this claim, because the trial court's decision incorrectly stated no counterclaim had been made:

> What about providing evidence of what the defendant[s] paid into the keh with their books and records? Wasn't Yun's participation in this keh through [Soon Hee], did she receive those monies, where did she deposit her keh monies, where are her records as to what she paid into the keh on Yun's behalf?

Nevertheless, in the last sentence of the "Conclusion" section of his decision, the judge said:

> There was no counterclaim for any monies that the plaintiff [] Hong may owe the defendants Soon [Hee] or [] Yun, there being no claim for a set off against the indebtedness found to be owed by the defendant Soon [Hee] to the plaintiff [] Hong, therefore the Court will not nor can it consider claims of the defendant which it may have referenced as set offs throughout this opinion.

22

Under the conflicting evidence presented at trial, the $75,000 claim could be viewed as part of the loan and repayment agreement between Hong and Soon Hee, or as an independent transaction between Hong and Yun. However, Yun is entitled to a disposition of the claim on remand, as his claim for $75,000 has not been decided in a fashion which comports with the record.

V.

We agree that the Fair Debt Collection Act claims should have been dismissed. That cause of action would only be appropriate if Hong had been a debt collector within the meaning of the statute, which she was not.

The Act is intended "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C.A. § 1692(e). It defines "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.
>
> [15 U.S.C.A. § 1692a(6).]

In addition to not coming within the definition, the conduct complained of was engaged in by Hong's former attorneys. Neither plaintiff can be held accountable for their actions.

## VI.

We do not agree with the trial court's dismissal of defendants' counterclaim for malicious prosecution. The cause of action for malicious prosecution provides a civil remedy to plaintiffs who have been subjected to baseless criminal actions. LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009). To sustain a claim for malicious prosecution, a plaintiff must prove the following four elements: "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." Ibid.

It is a complete defense to an action for malicious prosecution that the complainant acted on the advice of counsel that probable cause existed. Id. at 106; Weinstein v. Klitch, 106 N.J.L. 408, 409 (E. & A. 1929). Notwithstanding a malicious motive, the showing that the complainant properly relied on the advice of counsel erases the "absence of probable cause" element and precludes recovery. LoBiondo, supra, 199 N.J. at 106.

24

However, that defense requires a showing that "all of the material facts within [the complainant's] knowledge — that is those which would justify or negative the making of the complaint — are fully and truthfully stated to the attorney." Weinstein, supra, 106 N.J.L. at 409. The complainant must demonstrate that the attorney was provided with all of the facts necessary to make an informed decision on the probable cause issue. LoBiondo, supra, 199 N.J. at 106. Where the evidence suggests that the material parts of the information conveyed to the attorney were knowingly false, it is up to a jury to decide whether probable cause was absent. Weinstein, supra, 106 N.J.L. at 409.

The court dismissed defendant's claim for malicious prosecution because it found that plaintiffs had acted on the advice of counsel, and that counsel was aware of the material facts, because they had written collection letters.

There is no support for these findings, however, because the collection letters do not indicate that plaintiffs' attorneys were aware that the checks had been provided to Hong months earlier, were undated, and that at least two of them had been written with no payee. To the contrary, the letters misstated that Soon Hee had issued the checks on August 11, 2009. Contrary to the attorneys' assertion, Hong testified she had received checks months earlier in March and April 2009.

Thus the evidence does not support the court's finding that plaintiffs established lack of malice because they relied on the advice of counsel, and that counsel had been provided with all of the material facts. The court simply erred when it entered judgment in plaintiffs' favor on defendants' counterclaim for malicious prosecution. There were material issues of fact that remained to be decided on that issue, and those issues of fact arose from Hong's own testimony.

Moreover, the court erred as to the proofs in the record when it found that Soon Hee had no viable damage claim. According to the court, she was neither inconvenienced nor distressed by her arrest, and incurred only $5000 in attorney fees. A plaintiff proving malicious prosecution is entitled to recover attorney fees and is not required to establish a minimum amount. Seidel v. Greenberg, 108 N.J. Super. 248, 271 (Law Div. 1969). Furthermore, Soon Hee testified that she was panicked by her arrest, especially as the criminal charges proceeded. She was arrested, fingerprinted, photographed, searched, and compelled to appear in court on several occasions. Her ability to travel was restricted because she was required to turn over her passport. The court improperly overlooked her testimony. We therefore remand for a new trial on this cause of action as well.

Affirmed in part; reversed in part and remanded for a new trial on Soon Hee's counterclaim for malicious prosecution, both Soon Hee and Yun's counterclaim for breach of fiduciary duty, and Yun's counterclaim for $75,000. We express no opinion on the merits of the claims.

Affirmed in part, reversed and remanded in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION