**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2964-15T2

MARLENE MORGAN,

    Plaintiff-Respondent,

v.

PROGRESSIVE INSURANCE COMPANY
and/or PROGRESSIVE GARDEN
STATE INSURANCE COMPANY,

    Defendant-Appellant.

_____

        Argued October 3, 2017 — Decided November 8, 2017

        Before Judges Yannotti, Carroll and Mawla.

        On appeal from Superior Court of New Jersey,
        Law Division, Camden County, Docket No.
        L-4987-13.

        Jennifer A. Hindermann argued the cause for
        appellant (Cooper Maren Nitsberg Voss &
        DeCoursey, attorneys; Ms. Hindermann, on the
        briefs).

        Michael H. Foster argued the cause for
        respondent (Stark & Stark, attorneys; Mr.
        Foster, on the brief).

PER CURIAM

Plaintiff Marlene Morgan asserted a claim against defendant Progressive Insurance Company and/or Progressive Garden State Insurance Company for underinsured motorist (UIM) coverage arising from a motor vehicle accident, in which she allegedly sustained personal injuries. Defendant appeals from the judgment for plaintiff entered by the trial court on April 1, 2016. We affirm.

I.

On November 28, 2008, plaintiff was a passenger in a vehicle being driven by Gregory Moten westbound on Evesham Road in Cherry Hill. At the time, Ashoke Das was operating a vehicle in the opposite direction. According to plaintiff, Das attempted to make a left turn onto Caldwell Road in front of the Moten vehicle. Das's vehicle struck the front of the Moten vehicle, and plaintiff sustained certain injuries.

Thereafter, plaintiff filed suit against Das and settled her claim against him for the limits of his insurance coverage, $15,000. Plaintiff then filed this action against defendant seeking UIM benefits. At the time of the accident, plaintiff had an automobile policy with defendant, which provided $50,000 in UIM coverage.

The parties stipulated that Das was solely responsible for the accident, but defendant maintained plaintiff had not established she sustained injuries that met the limitation-on-

lawsuit threshold in N.J.S.A. 39:6A-8(a), as amended by the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35. The matter was tried before a jury.

At the trial, plaintiff testified that she sustained multiple injuries in the November 28, 2008 accident. Plaintiff stated that she worked for an entity that provides services to individuals with disabilities. She said she had been in an auto accident in November 2007 and sustained injuries to her neck and lower back. Since the accident occurred while she was on the job, she had to seek health care through her employer's occupational health services.

Plaintiff stated that by the end of 2007, she had completed treatment for the November 2007 accident. Plaintiff said she did not have any continuing problems with her neck, lower back, middle back, or upper back. She stated that she was able to return to work without any restrictions. She also stated that she was able to go back to her usual activities, which included spending time with her grandchildren, performing household chores, and bowling.

Plaintiff further testified that in the days after the November 28, 2008 accident, she woke up and could not move her neck and upper back. She went to see her primary care physician, and later saw a chiropractor. She told the chiropractor that she had pain in her neck and upper back, and at times pain radiated

3                                                                    A-2964-15T2

down her left arm. In addition, plaintiff had painful spasms in her back and chest every day.

Plaintiff treated with the chiropractor for about two years. She believed the treatment had provided some relief but the pain returned. The chiropractor referred plaintiff for tests and MRIs were performed. Plaintiff testified that the tests showed she "had a bulging dis[c] or something like that" in her neck and upper back.

Plaintiff was referred to an orthopedist, who prescribed medication and an injection, which provided some relief for about eight months. The doctor told plaintiff she could have additional injections or surgery. Plaintiff elected not to have surgery. She testified that she continued to work because she had to do so. She said she "just worked through the pain."

Plaintiff stated that the November 28, 2008 accident had limited her usual activities. She testified that she spends time with her grandchildren, but she is no longer able to pick them up when she wants to. Plaintiff enjoys bowling and participated in a bowling league, but can no longer engage in that activity. Plaintiff said she does not perform household chores as she used to. She explained that someone must accompany her to the grocery store and laundromat. She also said she lives with neck and upper back pain every day.

4

Plaintiff further testified that after the November 28, 2008 accident, she sustained other injuries. While working, plaintiff strained her elbow when assisting an individual with cerebral palsy. She also suffered an electric shock when checking a smoke alarm in the workplace. After these incidents, plaintiff saw doctors, but she did not require further medical care for her neck or back.

Plaintiff also had an accident during a work-related outing while riding in a bumper car with a client. Plaintiff hurt her leg, knee, and ankle. She went to a doctor, but testified that she did not hurt her neck or back. In addition, plaintiff slipped and fell backwards while bowling. She testified, however, that she did not injure her neck or back when she fell.

At the trial, plaintiff presented the videotaped testimony of her medical expert, Dr. Gary Goldstein, who stated that plaintiff had a cervical disc herniation, which was produced or made symptomatic by the November 28, 2008 accident. Dr. Goldstein testified that plaintiff was permanently symptomatic as a result of the accident.

The doctor said plaintiff had been in "some kind of accident" in 2007 and plaintiff had injured her neck and back, but she did not have any ongoing residual complaints. The doctor testified that when plaintiff was referred to him, he conducted a general

physical examination. He also performed various tests, including range-of-motion tests.

The doctor explained that in February 2009, plaintiff had MRIs of her neck as well as her mid- and lower-back. The doctor reviewed the reports of the MRIs, and stated that plaintiff had "some minor bulging throughout her neck" but the bulge at the C5-6 level of the spine was larger. He thought the MRI showed a "low grade herniation," which was consistent with plaintiff's complaints of central neck pain with pain radiating to the arm.

Defendant presented the videotaped testimony of Dr. Brian K. Zell, who performed an independent medical evaluation of plaintiff. Dr. Zell examined plaintiff and reviewed the radiographic studies. He testified that plaintiff had been involved in an auto accident on November 28, 2008, and sustained a possible cervical strain and possible strain to the lower back.

Dr. Zell opined that plaintiff had degenerative disc disease of the cervical spine, which was a pre-existing condition unrelated to the November 28, 2008 accident. He further testified that plaintiff had degenerative disc disease to the lower back, particularly at the L4-5 level of the spine, which also was unrelated to the accident. Dr. Zell stated that he found no evidence of cervical or lumbar radiculopathy, meaning

A-2964-15T2

"reproducible findings that traveled" from the neck into her arms, or from her lower back into her legs.

At the conclusion of the trial, plaintiff requested a jury instruction on aggravation of a pre-existing condition. The judge granted the request over defendant's objection. In addition, defendant sought an adverse inference with respect to the loss of the litigation file pertaining to the workers' compensation claim plaintiff asserted following the November 10, 2007 accident. The judge denied the application.

The jury found that plaintiff had sustained a permanent injury that was proximately caused by the November 28, 2008 accident, and awarded plaintiff $60,000 in damages. The judge molded the jury verdict to reflect the $50,000 limit on plaintiff's UIM coverage, and reduced that amount by the $15,000 plaintiff had recovered from Das.

Thereafter, defendant filed a motion for a new trial. The judge heard oral argument on February 5, 2016, and on that day entered an order denying the motion.

Plaintiff also sought attorney's fees, costs, and interest under the offer of judgment rule. R. 4:58-1(a); R. 4:58-2(b). Prior to trial, plaintiff had made an offer of judgment for $29,000. The judge granted the application and ordered defendant to pay plaintiff attorney's fees in the amount of $15,050, costs

and expenses totaling $4,778, and interest of $1,036. These amounts were added to plaintiff's modified award, resulting in a total judgment of $55,864. This appeal followed.

On appeal, defendant argues that: (1) the trial judge improperly precluded defendant from using plaintiff's statements in certain medical records for impeachment; (2) the judge erred by providing the jury with a charge for aggravation of a pre-existing condition, and by failing to tailor the charge to the facts of this case; (3) the judge should have provided an adverse inference charge regarding the loss of the litigation file pertaining to the plaintiff's prior accident; (4) the judge should have instructed the jury that in an action under AICRA's limitation-on-lawsuit threshold, range-of-motion tests are not recognized as objective credible evidence of a permanent injury; and (5) defendant was entitled to judgment notwithstanding the verdict.

II.

We turn first to defendant's argument that the trial judge erred by precluding defendant's counsel from questioning plaintiff about statements attributed to her in a doctor's report. As noted at trial, plaintiff testified that as a result of the November 28, 2008 accident, she has experienced limitations in certain

8

activities, including the performance of household chores and bowling.

On cross-examination, defendant's attorney began to question plaintiff about complaints attributed to her in reports by Ralph G. Cataldo, a doctor of osteopathic medicine, dated February 1, 2012, and June 7, 2013. It appears that Dr. Cataldo examined plaintiff as a result of workplace injuries that plaintiff sustained after the November 28, 2008 accident. The reports were apparently obtained for the purpose of asserting workers' compensation claims.

The first report related to the injuries plaintiff sustained when she assisted a client and when she checked the smoke detector in the workplace. The second report related to the bumper-car accident. Both reports list plaintiff's complaints, which include limitations on her ability to perform household chores and engage in bowling.

Plaintiff's attorney objected to the use of Dr. Cataldo's reports for cross-examination. The judge sustained the objection, finding that the statements attributed to plaintiff were hearsay. The judge stated that if defendant wanted to present the statements, defendant had to present Dr. Cataldo as a witness.

On appeal, defendant argues that the judge erred by precluding its attorney from questioning plaintiff regarding the complaints

attributed to her in Dr. Cataldo's reports. Defendant asserts that the statements were admissible under the hearsay exception in N.J.R.E. 803(b)(1) for statements of a party opponent. Defendant argues that the statements were admissible because they did not involve any complex medical diagnosis.

The trial court's evidentiary rulings are reviewed under an abuse-of-discretion standard. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). However, we apply a de novo standard of review in determining if the trial court correctly interpreted and applied the evidence rules. Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012) (citing Pressler & Verniero, Current N.J. Court Rules, comment 4.6 on R. 2:10-2 (2012); State v. Darby, 174 N.J. 509, 518 (2002)).

The statements attributed to plaintiff in Dr. Cataldo's reports are hearsay because defendant intended to offer the statements to prove that plaintiff reported those complaints to Dr. Cataldo. See N.J.R.E. 801(c) (defining hearsay as a statement, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Defendant correctly notes that N.J.R.E. 803(b)(1) provides an exception to the rule against admission of hearsay for statements by a party opponent. However, the statements were

contained in a doctor's reports, which were apparently obtained for the purpose of litigating workers' compensation claims.

Defendant did not, however, lay a proper foundation for the admission of the reports as business records under N.J.R.E. 803(c)(6). Defendant did not establish that the documents were made in the regular course of business, or that it was the regular practice of the business to make the record. Hahnemann Univ. Hosp. v. Dudnick, 292 N.J. Super. 11, 17 (App. Div. 1996).

We therefore conclude that the trial judge did not abuse his discretion by precluding defendant from questioning plaintiff about the statements in the reports.

III.

Next, defendant argues that the trial judge erred by charging the jury on aggravation of a pre-existing condition. The aggravation charge states in relevant part that

> If you find that [plaintiff's] preexisting
> illness/injury(ies)/condition was not causing
> him/her any harm or symptoms at the time of
> the accident, but that the preexisting
> condition combined with injuries incurred in
> the accident to cause him/her damage, then
> [plaintiff] is entitled to recover for the
> full extent of the damages he/she sustained.
>
> [Model Jury Charge (Civil), 8.11F "Aggravation
> of the Preexisting Disability" (1997).]

A. Lack of Notice of Claim of Aggravation.

Defendant argues the judge erred by granting plaintiff's request for the charge because plaintiff did not plead or place defendant on notice that she was pursuing a claim for aggravation of a pre-existing condition. We disagree. The judge did not err by finding that defendant was on notice that plaintiff was asserting such a claim.

Here, defendant served interrogatories upon plaintiff and plaintiff was asked if she was claiming that she sustained an injury in the subject accident that aggravated a pre-existing condition. In her answer, plaintiff objected to the question on the ground that it asked for a legal or medical opinion, which she was not qualified to provide. Nevertheless, without waiving that objection, plaintiff stated that she would rely upon the opinion and testimony of her medical expert.

In his report, Dr. Goldstein stated among other things that plaintiff had "a cervical disc herniation or its equivalent that was produced or made symptomatic by the November 28, 2008" accident. As the judge determined, Dr. Goldstein's report was sufficient to place defendant on notice of a potential claim for aggravation of a pre-existing condition. Therefore, we reject defendant's contention that it did not have notice of the claim.

B. Comparative Analysis.

Defendant also argues that the jury instruction on aggravation of a pre-existing condition was not warranted because Dr. Goldstein failed to provide a comparative analysis distinguishing the injuries sustained in the subject accident with any prior injuries to the same body part. Defendant contends this comparative medical analysis was required by Davidson v. Slater, 189 N.J. 166 (2007). Again, we disagree.

In Davidson, the Court noted that in a personal injury action that involves the AICRA limitation-on-lawsuit threshold, a plaintiff must establish that he or she sustained a bodily injury resulting from the "operation . . . or use of" an automobile, that results in one of the enumerated categories of injuries, including "a permanent injury within a reasonable degree of medical probability." Id. at 186 (quoting N.J.S.A. 39:6A-8(a)). The Court explained that when a plaintiff claims he or she sustained a permanent injury that aggravated a pre-existing condition, the plaintiff must present evidence comparing the injury sustained in the subject accident with injuries previously sustained to the same body parts. Id. at 185-86.

The Davidson Court noted, however, that when a plaintiff does not assert an aggravation claim, the plaintiff can carry his or her burden by demonstrating that the subject accident caused a

permanent injury "without having to exclude all prior injuries to the same body part." Id. at 170. The Court stated that

> [i]f defendant raises a genuine factual issue about the causation of plaintiff's claimed injuries by pointing to other injuries the plaintiff may have experienced, that disputed issue of causation is for the fact-finder to decide, except in those unusual instances when no reasonable fact-finder could conclude that the permanent injury was caused by the subject accident.
>
> [Ibid.]

On appeal, defendant argues that plaintiff requested the aggravation charge and therefore was required to present the comparative analysis required by Davidson. Defendant asserts that Dr. Goldstein's analysis failed as a matter of law because he based his analysis of the pre-existing condition solely upon plaintiff's subjective complaints. Defendant asserts that the doctor failed to review a single record pre-dating the November 28, 2008 accident.

We are not persuaded by these arguments. In our view, Dr. Goldstein provided a sufficient comparison of plaintiff's pre-existing condition with the injuries allegedly sustained in the subject accident. In his videotaped testimony, Dr. Goldstein testified that plaintiff had some low grade degenerative changes in her neck, which were "probably existent" before the accident.

The doctor emphasized that plaintiff was asymptomatic, and she either had a new disc bulge or low grade herniation "that was produced by this accident or whatever was there predating this accident was extended or made symptomatic[.]" The doctor based his analysis in part on the MRIs performed after the November 28, 2008 accident, which he indicated showed a pre-existing degenerative condition.

Moreover, defendant presented testimony from Dr. Zell who opined that plaintiff possibly sustained a lumbar strain in the November 28, 2008 accident. He said plaintiff had degenerative disc disease in the cervical and lumbar spine, which were pre-existing conditions and unrelated to the subject accident. He based his opinions on his physical examination of plaintiff; review of the records pertaining to the November 28, 2008 accident, including the MRIs; and records pertaining to the November 10, 2007 accident, including a CT scan of plaintiff's neck and x-rays of her lower back.

Considering the evidence as a whole, we are convinced that the judge did not err by charging the jury on aggravation of a pre-existing condition. Dr. Goldstein and Dr. Zell both agreed that plaintiff had a pre-existing condition, although they disagreed as to whether plaintiff sustained a permanent injury to her neck and lower back in the subject accident.

A-2964-15T2

While Dr. Goldstein did not review the diagnostic studies that pre-dated the November 28, 2008 accident, he was able to base his opinion as to plaintiff's pre-existing condition in part upon the diagnostic studies performed after that accident. Dr. Zell also opined that plaintiff had a pre-existing disc disease, which pre-dated the subject accident. In light of all of the evidence, the judge properly instructed the jury on aggravation of a pre-existing condition.

C. Request for Modification of Aggravation Charge.

Defendant further argues that the judge erred by denying its request to modify the aggravation charge. According to defendant, the judge should have instructed the jury that the charge was given merely to assist the jury in calculating damages, and not as a means to determine if plaintiff had shown that she sustained a permanent injury proximately caused by the November 28, 2008 accident. Again, we disagree.

Here, the judge correctly found that the model jury charge on permanency was sufficient to address defendant's concern. The judge noted the jury had to find that plaintiff had a permanent injury, whether it was an aggravation of a pre-existing condition or not. The instructions the judge later provided stated in pertinent part:

16

Now in order to recover damages in this case, the plaintiff must prove by a preponderance of the evidence that she sustained injuries which were permanent. And she must do that within a reasonable degree of medical probability. If you find that plaintiff[']s injuries caused by the accident were not permanent, your verdict must be for the defendant. If you find the injuries caused by the accident [are] permanent, then your verdict must be for the plaintiff.

An injury shall be considered permanent when the body part, or organ, or both, has not healed to function normally, and will not heal to function normally with further medical treatment. Plaintiff must prove this claim through objective, credible medical evidence. Objective proof means the injury must be verified by physical examination, or medical testing, and cannot be based solely upon the plaintiff's subjective complaints.

We conclude the judge's instructions clearly informed the jury that plaintiff could not recover damages unless she proved that she sustained a permanent injury that was proximately caused by the subject auto accident. Therefore, the judge did not err by denying defendant's motion to modify the charge on aggravation of a pre-existing condition.

IV.

Next, defendant argues that the judge erred by denying its request to bar plaintiff from arguing that range-of-motion tests are objective tests upon which a jury could rely in determining whether plaintiff sustained a permanent injury. Defendant contends

17

that the entire theory of plaintiff's case was based on the assertion that plaintiff suffers pain and decreased range of motion. According to defendant, Davidson precludes a plaintiff from establishing a permanent injury under the AICRA limitation-on-lawsuit threshold based on range-of-motion tests and subjective symptomology.

We are convinced that this argument is without sufficient merit to warrant extended comment. R. 2:11-3(e)(1)(E). As noted previously, the judge's final instructions to the jury made clear that plaintiff had to prove she sustained a permanent injury with objective, credible evidence, and her injury could not be proven by subjective complaints alone.

Moreover, Dr. Goldstein's opinion was not based solely on range-of-motion tests. As noted, the doctor based his opinion in part upon his review of the MRIs. Therefore, the judge did not err by denying defendant's application for an instruction to the jury regarding range-of-motion tests.

V.

In addition, defendant argues that the judge erred by refusing to provide an adverse inference charge with regard to plaintiff's failure to produce certain documents relating to the workers' compensation claim she asserted as a result of the November 10, 2007 auto accident. Defendant maintains the charge was warranted

due to the intentional or negligent disposal of evidence. We disagree.

"Spoliation typically refers to the destruction or concealment of evidence by one party to impede the ability of another party to litigate a case." Jerista v. Murray, 185 N.J. 175, 201 (2005) (citing Rosenblit v. Zimmerman, 166 N.J. 391, 400-01 (2001)). The duty to preserve evidence arises when (1) there is pending or likely litigation and knowledge of this fact by the alleged spoliating party, (2) the evidence is relevant to litigation, and (3) the opposing party would be prejudiced by the destruction or disposal of the evidence. Aetna Life and Cas. Co. v. Imet Mason Contractors, 309 N.J. Super. 358, 366 (App. Div. 1998) (quoting Hirsch v. General Motors Corp., 266 N.J. Super. 222, 250-51 (Law Div. 1993)).

"In civil litigation, depending on the circumstances, spoliation of evidence can result in a separate tort action for fraudulent concealment, discovery sanctions, or an adverse trial inference against the party that caused the loss of evidence." Jerista, supra, 185 N.J. at 201-02 (citing Rosenblit, supra, 166 N.J. at 401-06). "The spoliation inference permits the jury to infer that the evidence destroyed or concealed would not have been favorable to the spoliator." Id. at 202 (citing Rosenblit, supra, 166 N.J. at 401-02).

The instruction should be provided if a party establishes that the other party "improperly caused the loss of the evidence." Davis v. Barkaszi, 424 N.J. Super. 129, 148 (App. Div. 2012) (citing Cockerline v. Menendez, 411 N.J. Super. 596, 621 (App. Div.), certif. denied, 201 N.J. 499 (2010)). Furthermore, the inference may be drawn against the party that negligently or intentionally failed to preserve the evidence. Rosenblit, supra, 166 N.J. at 401-02.

Here, the judge did not err by refusing to provide an adverse inference charge to the jury. The record shows that defendant asked plaintiff to produce the litigation file related to the plaintiff's November 10, 2007 accident. Plaintiff's attorney stated that the records had been placed at a private, off-site storage facility, but they were either misplaced or could not be found.

The judge found that defendant had not shown that plaintiff had intentionally or negligently failed to preserve evidence. The record supports that finding. Under the circumstances, an adverse inference charge was not warranted.

VI.

Defendant further argues that it was entitled to judgment notwithstanding the verdict. Defendant contends plaintiff presented insufficient objective credible medical evidence to

support the jury's determination that plaintiff suffered a permanent injury, as that term is defined in N.J.S.A. 39:6A-8(a), which was proximately caused by the November 28, 2008 accident.

Under Rule 4:40-1, a party may move for entry of judgment either "at the close of all the evidence or at the close of the evidence offered by an opponent." Rule 4:40-2(b) states that if the motion for judgment is denied, it may be renewed in accordance with the procedure under Rule 4:49-1 for a new trial. Rule 4:40-2(b) also states that every motion for a new trial "shall be deemed to include, in the alternative, a renewal of any motion for judgment made by that party at the close of the evidence."

Here, defendant did not formally move for entry of judgment after plaintiff presented her evidence or at the close of all the evidence. Defendant did, however, file a motion for a new trial. That motion was premised in part upon defendant's assertion, which was made at various times throughout the trial, that plaintiff had not presented sufficient objective credible evidence to support her claim under N.J.S.A. 39:6A-8(a). The judge denied the motion.

A motion for judgment notwithstanding the verdict under Rule 4:40-2 must be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in favor of a party. Lanzet v. Greenberg, 126 N.J. 168, 174 (1991). In considering such a motion, the court must accept "as true all the evidence which

21                                                          A-2964-15T2

supports the position of the party defending against the motion and [accord that party] the benefit of all inferences which can reasonably and legitimately be deduced therefrom . . . ." Verdicchio v. Ricca, 179 N.J. 1, 30 (2004) (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000)). If "reasonable minds could differ, the motion must be denied." Ibid. (quoting Estate of Roach, supra, 164 N.J. at 612). When reviewing a trial court's order on the motion, we apply the same standard. See Frugis v. Bracigliano, 177 N.J. 250, 269 (2003).

We are convinced that plaintiff presented sufficient evidence to support the jury's finding that plaintiff suffered a permanent injury, as defined in N.J.S.A. 39:6A-8(a), which was proximately caused by the November 28, 2008 accident. Defendant's arguments to the contrary are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22                                                    A-2964-15T2