766 A.2d 749

ERIN ROSENBLIT, PLAINTIFF–APPELLANT AND CROSS–RE-SPONDENT, v. JOHN F. ZIMMERMAN, JR., D.C. AND HEALTH FIRST CHIROPRACTIC CLINIC, DEFENDANTS–RESPON-DENTS AND CROSS–APPELLANTS, AND JOHN DOES 1–X, UNKNOWN DEFENDANTS FICTITIOUSLY NAMED, DEFEN-DANTS.

Argued September 25, 2000—Decided February 26, 2001.

*Gary D. Wodlinger* argued the cause for appellant and cross-respondent, (*Lipman, Antonelli, Batt, Dunlap, Wodlinger & Gilson*, attorneys; *Mr. Wodlinger and Edward A. Lopez*, on the briefs).

*Timothy M. Crammer* argued the cause for respondents and cross-appellants, *(Paarz, Master, Koernig, Crammer, O'Brien, Bishop & Horn,* attorneys).

The opinion of the Court was delivered by

LONG, J.

This case involves a physician who deliberately destroyed and altered medical records in anticipation of a patient's malpractice lawsuit against him. By happenstance, the patient obtained the original records prior to trial. The jury returned a verdict in favor of the physician in the malpractice action. The patient later recovered a judgment for fraudulent concealment of evidence. Both parties appealed. We are called upon here to determine what remedies are available to a plaintiff in these circumstances.

## I

The facts are not in serious dispute. Plaintiff Erin Rosenblit, a registered nurse, sought treatment from defendant, Dr. John F. Zimmerman, Jr., a chiropractor, for midback pain early in 1992. In January and February of 1992, and again in May and June of 1992, Dr. Zimmerman treated Rosenblit with chiropractic manipulation. In manipulation, Zimmerman placed one hand under Rosenblit's chin, the other hand on the back of her skull, and moved her backward by pulling up on her chin. After her third or fourth visit, Rosenblit developed new symptoms, including neck pain, headaches, nausea, and ringing in her ears. Rosenblit testified that even after bringing those complaints to Dr. Zimmerman's attention, he attempted the same type of neck manipulation during a subsequent visit.

Rosenblit went to other doctors in an attempt to determine what was wrong with her. Dr. Jerome Cottler, who saw Rosenblit in October 1994, found C1–C2 instability in her neck on the basis of X rays of plaintiff's neck that revealed a space between the C1 and C2 vertebrae greater than two millimeters. She underwent orthopaedic surgery in January 1995 to fuse two cervical vertebrae

in her spine. Rosenblit testified that the symptoms that brought her to seek treatment from defendant in the first place were not relieved until after the fusion surgery.

In 1995, Rosenblit sued Dr. Zimmerman, and Health First Chiropractic Clinic in which Dr. Zimmerman was a partner, alleging malpractice. She obtained a copy of her medical chart from Dr. Zimmerman's office prior to commencing the malpractice lawsuit. During discovery, Rosenblit received another copy of her chart from Dr. Zimmerman and realized that it was different from the one she already had in her possession. The altered chart made it appear that she was improving with the treatment administered by the doctor; that her complaints about neck pain after the treatment were really complaints about mid-back pain; and that she was satisfied with the treatment when she left his care. The original unaltered chart, however, revealed that Rosenblit was not gradually improving and that she was dissatisfied with her condition when she last visited Dr. Zimmerman. When Dr. Zimmerman was confronted with that discrepancy at his deposition, he explained that when he was served with the summons and complaint, almost two years after treating Rosenblit, he decided to recopy the chart to make it more legible. After he recopied the chart, he destroyed the originals. A comparison of the two charts, however, shows alterations that are plainly not the result of recopying. With respect to those alterations, Dr. Zimmerman testified at his deposition that he wanted to make the records more complete, and that he remembered details that he had never recorded earlier.

After discovering that a second set of altered medical records existed, Rosenblit amended her complaint to include counts for spoliation and fraudulent concealment of evidence based upon Dr. Zimmerman's conduct. The trial court bifurcated the malpractice counts from the spoliation and fraudulent concealment counts. All claims, however, were tried before the same jury, with the malpractice case proceeding first.

Before the malpractice portion of the trial began, the trial court barred evidence of Dr. Zimmerman's alteration of the medical chart, except if used to impeach his credibility as a witness. Predictably, defense counsel did not call Dr. Zimmerman to the stand, and Rosenblit therefore was barred from referring to the altered records, or to Zimmerman's deposition acknowledging and attempting to explain the alterations.

The malpractice trial proceeded with Rosenblit's original chart being placed in evidence, and Dr. Zimmerman stipulating that Rosenblit's version of the chiropractic treatment that he provided was true. Both parties presented expert witnesses about whether or not Dr. Zimmerman's treatment of Rosenblit was within the accepted standard of care.

That testimony need not be recounted here except to observe that it constituted the proverbial battle of the experts. The jury returned a verdict in favor of Dr. Zimmerman on the issue of negligence, never reaching the proximate cause question.

Over defense counsel's objections, the spoliation and fraudulent concealment trial proceeded before the same jury. During that trial, Rosenblit presented the altered records, and Dr. Zimmerman's deposition testimony explaining why he altered and then destroyed her records. Dr. Zimmerman moved for judgment at the close of Rosenblit's case and at the close of all the evidence, arguing that she had not shown that his alteration of her medical chart impaired her ability to prove her malpractice case. Both motions were denied. The trial court submitted a single fraudulent concealment count to the jury.

The jury returned a verdict in favor of Rosenblit, and awarded her $421.75 in compensatory damages, and $500,000 in punitive damages. Dr. Zimmerman filed a motion for judgment notwithstanding the verdict, or alternatively, for a new trial. The trial court denied both motions subject to a remittitur of the punitive damages award to $150,000. Rosenblit accepted the remittitur.

Thereafter, Rosenblit appealed from the judgment in the malpractice action on the ground that the jury should have been permitted to consider Dr. Zimmerman's alteration of her medical records, regardless of his decision not to take the stand. Dr. Zimmerman cross-appealed from the fraudulent concealment verdict, maintaining that Rosenblit could not sustain that cause of action because she had the accurate records in her possession and thus the alteration and destruction of the medical records did not impair her ability to file or prove her malpractice case. In an unpublished *per curiam* opinion, a panel of the Appellate Division affirmed both verdicts with a dissenting opinion.

Regarding the evidentiary issue at the malpractice trial, the court recognized that a record alteration is admissible as the statement of a party opponent under *Rule* 4:16–1(a) and *N.J.R.E.* 803(b), and "as evidence of defendant's own perception that the actual records did not support his defense." Noting that the "trial judge apparently agreed with defendant that any relevance would be outweighed by prejudice" the panel stated that "[w]e need not resolve that balancing question in light of our conclusion that any error was harmless." That conclusion was, in turn, based on the court's determination that the altered record evidence was relevant only to proximate cause, an issue the jury never reached. The court thus affirmed the dismissal of the malpractice action.

On the fraudulent concealment verdict, the court recognized the existence of the fraudulent concealment tort and underscored the intentional nature of Dr. Zimmerman's actions and the special fiduciary relationship between doctor and patient that made those actions especially egregious.[1] Concluding that Dr. Zimmerman had a clear duty to preserve Rosenblit's medical records, the court turned to the extent of the harm suffered by Rosenblit and

---

[1] Zimmerman's conduct in altering Rosenblit's medical records violated *N.J.A.C.* 13:35–6.5(b), a rule that places physicians under a duty to ensure that "[a]ll treatment records ... accurately reflect the treatment or services rendered." Corrections or changes to entries may be made only where the change is clearly identified. *N.J.A.C.* 13:35–6.5(b)(2).

concluded that "even the relatively low out-of-pocket expenses of additional discovery, combined with the additional legal preparation required, sufficiently satisfy the elements of damage and disruption to support the cause of action." Although the court affirmed the fraudulent concealment verdict, it exercised original jurisdiction under *Rule* 2:10–5 and remitted the verdict to $50,000. The court also affirmed the denial of Dr. Zimmerman's motion for a new trial conditioned on Rosenblit's acceptance of the remittitur. In effect, the court affirmed, as modified, the judgment of liability for fraudulent concealment of evidence.

In a dissenting opinion, Judge Stern disagreed with the majority that the fraudulent concealment judgment could be sustained, noting that Rosenblit always had a copy of her unaltered medical chart. Under those circumstances, he reasoned that Dr. Zimmerman's destruction of the chart did not impair Rosenblit's ability to prove her malpractice case. Her additional litigation costs, according to Judge Stern, were inadequate to meet the element of damage necessary to prevail on the fraudulent concealment tort. He concluded that "the ability to recover sanctions for the time and costs related to the discovered misconduct should preclude a finding that these costs also constitute 'damages' for purposes of the law of spoliation."

The matter came to this Court by way of a petition for certification and an appeal as of right. We granted Rosenblit's petition, 163 *N.J.* 11, 746 *A.2d* 457 (2000), on the question whether the trial court, in the malpractice action, erred by excluding evidence of Dr. Zimmerman's deliberate alteration and destruction of her medical records. Dr. Zimmerman's appeal as of right, under *Rule* 2:2–1(a)(2), deals with the question whether Rosenblit successfully met the elements of a claim for fraudulent concealment or spoliation.

## II

Spoliation, as its name implies, is an act that spoils, impairs or taints the value or usefulness of a thing. *Black's Law Dictionary* 1409 (7th ed.1999). In law, it is the term that is used to describe

the hiding or destroying of litigation evidence, generally by an adverse party. Bart S. Wilhoit, Comment, *Spoliation of Evidence: The Viability of Four Emerging Torts*, 46 *UCLA L.Rev.* 631, 633 (1998).

When spoliation occurs, the law has developed a number of civil remedies,[2] the purpose of which is to make whole, as nearly as possible, the litigant whose cause of action has been impaired by the absence of crucial evidence; to punish the wrongdoer; and to deter others from such conduct. Steffen Nolte, *The Spoliation Tort: An Approach to Underlying Principles*, 26 *St. Mary's L.J.* 351, 355–56 (1995).

### A.

The best known civil remedy that has been developed is the so-called spoliation inference that comes into play where a litigant is made aware of the destruction or concealment of evidence during the underlying litigation. Since the seventeenth century, courts have followed the rule "omnia praesumuntur contra spoliatorem," which means "all things are presumed against the destroyer." *Hirsch v. General Motors Corp.*, 266 *N.J.Super.* 222, 258, 628 *A*.2d 1108 (Law Div.1993); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 *F*.3d 76, 78 (3d Cir.1994); Lawrence B. Solum & Stephen J. Marzen, *Truth and Uncertainty: Legal Control of the Destruction of Evidence*, 36 *Emory L.J.* 1085, 1087 (1987).

Courts use the spoliation inference during the underlying litigation as a method of evening the playing field where evidence has been hidden or destroyed. It essentially allows a jury in the

---

[2] Under certain circumstances, criminal sanctions also may be available. For instance, New Jersey's falsification statute, *N.J.S.A.* 2C:28–6(1), provides in pertinent part:

A person commits a crime of the fourth degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) Alters, destroys, conceals or removes any article, object, record, document or other thing of physical substance with purpose to impair its verity or availability in such proceeding or investigation....

underlying case to presume that the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to him or her. Solum & Marzen, *supra*, 36 *Emory L.J.* at 1087; Robert Gray Palmer, *Altered and 'Lost' Medical Records*, 35 *May Trial* 31, 35 (1999). *See, e.g., Dow Chem. Co. (U.K.) v. S.S. Giovannella D'Amico*, 297 *F.Supp.* 699, 701 (S.D.N.Y.1969) (stating that intentional destruction of evidence relevant to proof of an issue at trial gives rise to an inference unfavorable to spoliator); *Collins v. Throckmorton*, 425 *A.2d* 146, 150 (Del.1980) (recognizing "the general rule that where a litigant intentionally suppresses or destroys pertinent evidence, an inference arises that such evidence would be unfavorable to his case"); *Ritter v. Meijer, Inc.*, 128 *Mich.App.* 783, 341 *N.W.2d* 220, 222 (1983) ("When a party deliberately destroys evidence, a presumption arises that if the evidence were produced at trial, it would operate against the party who deliberately destroyed it."). Commentators have characterized the spoliation inference as a powerful tool. Theresa M. Owens, Note, *Should Iowa Adopt the Tort of Intentional Spoliation of Evidence in Civil Litigation?*, 41 *Drake L.Rev.* 179, 199 (1992).

### B.

■ A second and more traditional remedy generally available against a party who destroys evidence is the discovery sanction. *Allis–Chalmers v. Liberty Mut.*, 305 *N.J.Super.* 550, 557, 702 *A.2d* 1336 (App.Div.1997). *See also Manorcare Health Servs., Inc., v. Osmose Wood Preserving, Inc.*, 336 *N.J.Super.* 218, 230, 764 *A.2d* 475 (App.Div.2001)("Trial courts have the 'inherent discretionary power to impose sanctions for failure to make discovery.' ")(quoting *Hirsch, supra*, 266 *N.J.Super.* at 260, 628 *A.2d* 1108). For instance, where a party fails to comply with a discovery demand or request, *Rule* 4:23–4 provides that the court may order that designated facts be taken as established, refuse to permit the disobedient party to support or oppose designated claims or defenses, prohibit the introduction of designated matters into

evidence, dismiss an action, or enter judgment by default. That rule further provides that the court may order the delinquent party to pay reasonable expenses resulting from his or her conduct, including attorney's fees. *Manorcare Health Servs., supra,* 336 *N.J.Super.* at 237, 764 *A.2d* 475(noting that "[b]ecause a plaintiff who destroys evidence interferes with a defendant's ability to defend a lawsuit and right to discovery, 'the nonspoliating defendant may even be entitled to counsel fees' ")(quoting Pressler, *Current N.J. Court Rules,* comment on *R.* 4:23–4 (1993)).

## C.

Another remedy for the destruction of litigation evidence is a separate tort action against the spoliator. Two distinct types of conduct have been identified in other jurisdictions as potentially subjecting a miscreant to a tort remedy: intentional spoliation and negligent spoliation. Wilhoit, *supra,* 46 *UCLA L.Rev.* at 644. Because the conduct of Dr. Zimmerman in this case was entirely purposeful, we confine our discussion to the tort remedy for intentional spoliation.

Several jurisdictions have recognized a new tort of intentional spoliation of evidence. *Hazen v. Municipality of Anchorage,* 718 *P.*2d 456, 463–64 (Alaska 1986)(recognizing "intentional interference with prospective civil action by spoilation of evidence" as independent cause of action in Alaska); *Coleman v. Eddy Potash, Inc.,* 120 *N.M.* 645, 905 *P.*2d 185, 189 (1995)(holding that New Mexico recognizes cause of action for intentional spoliation of evidence); *Smith v. Howard Johnson Co.,* 67 *Ohio St.*3d 28, 615 *N.E.*2d 1037, 1038 (1993)(certifying that Ohio would recognize intentional spoliation claims).

Those jurisdictions have set forth the elements of the tort as follows: (1) the existence of pending or probable litigation involving the plaintiff; (2) defendant's knowledge of the pendency or fact of the litigation; (3) intentional destruction of evidence by the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the

defendant's acts. Kristin Adamski, Comment, *A Funny Thing Happened on the Way to the Courtroom: Spoliation of Evidence in Illinois,* 32 *J. Marshall L.Rev.* 325, 333 (1999). *Accord Coleman, supra,* 905 *P.*2d at 189; *Smith, supra,* 615 *N.E.*2d at 1038.

Some courts have refused to recognize any tort action to remedy spoliation, holding instead that the evidentiary rules, along with adverse inferences will suffice. *Lucas v. Christiana Skating Ctr., Ltd.,* 722 *A.*2d 1247, 1250 (Del.Super.Ct.1998)("[J]ury instructions as to permissible inferences provide adequate protection for a plaintiff and, thus, [court] refuses to recognize independent torts of negligent or intentional spoliation of evidence."); *Monsanto v. Reed,* 950 *S.W.*2d 811, 815 (Ky.1997)(declining to create new cause of action for spoliation, instead holding "[w]here the issue of destroyed or missing evidence has arisen, we have chosen to remedy the matter through evidentiary rules and 'missing evidence' instructions"); *Miller v. Montgomery County,* 64 *Md.App.* 202, 494 *A.*2d 761, 767–68(finding no need for separate cause of action where alleged spoliator was party to underlying action because adverse inference instructions provide adequate remedy), *cert. denied,* 304 *Md.* 299, 498 *A.*2d 1185 (1985). That, of course, is true only if the spoliation is discovered in time for the underlying litigation, or so soon afterward that the litigant has an opportunity under the rules to seek relief from judgment and retry his or her case. *E.g., R.* 4:50–1; 4:50–2.

Other courts have refused to recognize a new tort because they conceive of spoliation as remediable under existing tort principles. *LaRaia v. Superior Court,* 150 *Ariz.* 118, 722 *P.*2d 286, 289 (1986)(declining to recognize independent tort of spoliation because "remedy for the problem before [court] is well within the realm of existing tort law"); *Elias v. Lancaster Gen. Hosp.,* 710 *A.*2d 65, 67–68 (Pa.Super.1998)(noting that "traditional remedies more than adequately protect the 'non-spoiling' party when the 'spoiling' party is a party to the underlying action" and finding it unnecessary "to create an entirely new and separate cause of action for a third party's negligent spoliation of evidence because

traditional negligence principles are available and adequate remedies exist under those principles to redress the negligent destruction of potential evidence"). New Jersey falls into that category.

In *Viviano v. CBS, Inc.*, 251 *N.J.Super.* 113, 119–20, 597 *A.*2d 543 (App.Div.1991), *certif. denied,* 127 *N.J.* 565, 606 *A.*2d 375 (1992), plaintiff brought suit against her employer for fraudulently concealing the only available information relevant to her product liability case against the manufacturer of the press machine that injured her at work. A jury awarded her compensatory and punitive damages for the intentional fraudulent concealment. *Id.* at 120, 597 *A.*2d 543. On appeal the defendant argued, among other things, that there was no tort remedy for its conduct. *Id.* at 121, 597 *A.*2d 543. The Appellate Division disagreed, invoking *State of N.J., Dep't of Environ. Protect. v. Ventron Corp.*, 94 *N.J.* 473, 503–04, 468 *A.*2d 150 (1983), where we described the elements of the tort of fraudulent concealment of evidence in another context:

the deliberate concealment or nondisclosure by the seller of a material fact or defect not readily observable to the purchaser, with the buyer relying upon the seller to his detriment.

[94 *N.J.* 473, 503–04, 468 *A.*2d 150 (1983) (citing *Weintraub v. Krobatsch*, 64 *N.J.* 445, 455, 317 *A.*2d 68 (1974); *Berman v. Gurwicz*, 189 *N.J.Super.* 89, 458 *A.*2d 1311 (Ch.Div.1981), *aff'd,* 189 *N.J.Super.* 49, 458 *A.*2d 1289 (App.Div.1983), *certif. den.,* 94 *N.J.* 549, 468 *A.*2d 197 (1983)).]

*Viviano* properly denominated the conduct of destruction of litigation evidence as spoliation and, in so doing, cited cases and commentaries that recognized an independent tort remedy for that conduct. *Viviano, supra,* 251 *N.J.Super.* at 124–26, 597 *A.*2d 543 (citing *County of Solano v. Delancy,* 264 *Cal.Rptr.* 721, 729 (Ct.App.1989)(review denied and opinion ordered not officially published); James F. Thompson, Comment, *Spoliation of Evidence: A Troubling New Tort,* 37 *U. Kan. L.Rev.* 563 (1989); Solum & Marzen, *supra,* 36 *Emory L.J.* 1085; *Hazen, supra,* 718 *P.*2d at 463–64). Adhering to the well established principle that the recognition of a new cause of action is reserved to the Legislature and the Supreme Court, *Tynan v. Curzi,* 332 *N.J.Super.* 267, 277, 753 *A.*2d 187 (App.Div.2000), *Viviano* did not

recognize a novel cause of action for spoliation, but identified a pre-existing tort remedy for that conduct: fraudulent concealment. The court held that plaintiff had proven the elements set forth in *Ventron*. *Viviano, supra,* 251 *N.J.Super.* at 124, 597 *A.2d* 543. Those elements have been summarized as follows:

> (1) that defendants had a legal obligation to disclose the evidence to plaintiff; (2) that the evidence was material to plaintiff's case; (3) that plaintiff could not have readily learned of the concealed information without defendant disclosing it; (4) that defendant *intentionally* failed to disclose the evidence to plaintiff; and (5) that plaintiff was harmed by relying on the nondisclosure.
>
> [*Hirsch, supra,* 266 *N.J.Super.* at 238, 628 *A.2d* 1108 (emphasis added)(citing *Viviano, supra,* 251 *N.J.Super.* at 123, 597 *A.2d* 543).]

■ Although some commentators have interpreted *Viviano* and its progeny as having created a new tort of intentional spoliation, Adamski, *supra,* 32 *J. Marshall L.Rev.* at 332; Maria A. Losavio, *Synthesis of Louisiana Law on Spoliation of Evidence–Compared to the Rest of the Country, Did We Handle It Correctly?,* 58 *La. L.Rev.* 837 (1998), we do not read our case law that way. To be sure, *Viviano* identified intentional spoliation of litigation evidence as wrongful conduct and also identified a tort remedy for that wrong. However, that tort remedy was not novel, but merely an invocation of the previously recognized tort of fraudulent concealment, adapted to address concealment or destruction during or in anticipation of litigation. *Gilleski v. Community Med. Ctr.,* 336 *N.J.Super.* 646, 650, 765 *A.2d* 1103 (App.Div.2001)(noting that New Jersey recognizes tort of fraudulent concealment as remedy for spoliation and citing *Viviano, supra,* 251 *N.J.Super.* at 123, 597 *A.2d* 543, for the elements it distilled from *Ventron, supra,* 94 *N.J.* at 503, 468 *A.2d* 150).

■ We fully approve of that approach. Our only difference with *Viviano* is in its articulation of the elements of the tort of fraudulent concealment. In our view, a slight modification more aptly describes what must be proved when fraudulent concealment occurs in a litigation context. The elements that must be established by a plaintiff in such a fraudulent concealment action are:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;

(2) That the evidence was material to the litigation;

(3) That plaintiff could not reasonably have obtained access to the evidence from another source;

(4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;

(5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

We are satisfied that those elements properly reflect the application of fraudulent concealment principles in a litigation setting. We hold that the tort of fraudulent concealment, as adopted, may be invoked as a remedy for spoliation where those elements exist.[3] Such conduct cannot go undeterred and unpunished and those aggrieved by it should be made whole with compensatory damages and, if the elements of the Punitive Damages Act, *N.J.S.A.* 2A:15–5.12, are met, punitive damages for intentional wrongdoing.

### D.

A party's access to the remedies we have catalogued will depend upon the point in the litigation process that the concealment or destruction is uncovered. If it is revealed in time for the underlying litigation, the spoliation inference may be invoked. In addition, the injured party may amend his or her complaint to add a count for fraudulent concealment. As the trial court realized here, those counts will require bifurcation because the fraudulent concealment remedy depends on the jury's assessment of the underlying cause of action. In that instance, after the jury has returned a verdict in the bifurcated underlying action, it will be required to determine whether the elements of the tort of fraudu-

---

[3] We are not called upon here to determine what circumstances, if any, would entitle a defendant who has suffered destruction of evidence in the underlying litigation to invoke the fraudulent concealment tort remedy. *See, e.g., Hewitt v. Allen Canning Co.*, 321 *N.J.Super.* 178, 184–85, 728 A.2d 319 (App.Div.)(ruling a defendant's tort cause of action may be brought against a spoliator who is not a party to the underlying case), *certif. denied*, 161 *N.J.* 335, 736 A.2d 528 (1999). *But see Fox v. Mercedes–Benz Credit Corp.*, 281 *N.J.Super.* 476, 483, 658 A.2d 732 (App.Div.1995)(noting that remedy is "inapplicable to defendant's ability to defend a lawsuit" because dismissal and discovery sanctions suffice to make defendant whole as against spoliating plaintiff).

lent concealment have been established, and, if so, whether damages are warranted. Further, the plaintiff may be awarded discovery sanctions if the court determines that they are justified in light of the outcome in the fraudulent concealment trial.

■ If, however, the spoliation is not discovered until after the underlying action has been lost or otherwise seriously inhibited, the plaintiff may file a separate tort action. In such an action, plaintiff will be required to establish the elements of the tort of fraudulent concealment. To do so, the fundamentals of the underlying litigation will also require exposition. Unless such an action is allowed, a belatedly discovered spoliation claim would be without a meaningful remedy. Obviously the plaintiff in such an action also could recover discovery sanctions if the court determines that they are warranted in light of the jury verdict.

### III

■ Neither the spoliation inference nor a separate tort action was appropriate in this case because Rosenblit not only uncovered the concealment prior to the malpractice trial, but was fortunate enough to have obtained copies of the original records.' Thus the evidence was not absent when it was required and there was no need to presume what the original record entailed. Nor was there a basis for a separate tort action for losses sustained as a result of missing evidence. As the dissenter below recognized, such an action cannot be maintained when the evidence the spoliator sought to hide or destroy has come to light in time for the underlying litigation.

Because the records Dr. Zimmerman altered were fully aired during the malpractice litigation, its outcome could not have been affected by the attempted spoliation. Thus, there was no basis for a fraudulent concealment action against him. Accordingly, we reverse the judgment entered upon that jury verdict.

### IV

■ That conclusion does not end the matter however, because an error took place during the malpractice action that requires a

retrial. That error was the trial court's circumscription of Rosenblit's right to apprise the jury of Dr. Zimmerman's alteration of her medical records.

Rosenblit's counsel initially argued that Dr. Zimmerman's conduct in altering her medical records was relevant to the issue of his credibility. The trial court agreed and, over defense counsel's objections, declined to exclude the evidence as prejudicial under *N.J.R.E.* 403. Following that ruling, defense counsel informed the court that Dr. Zimmerman would accept Rosenblit's version of his treatment and, therefore, would not testify at trial. The effect of that tactic was to extract a ruling from the trial court that, because Dr. Zimmerman's credibility was no longer in issue, evidence of the alteration was not relevant. In other words, the trial court viewed the alteration of the medical records as extrinsic evidence bearing on a witness's credibility and thus admissible under *N.J.R.E.* 607.

The problem with that narrow view is that Dr. Zimmerman was not just a witness. He was a party to the action, and subject to *N.J.R.E.* 803(b) that provides that a statement made by a party opponent may be offered against him or her in evidence. The alteration of Rosenblit's medical records constituted a verbal act, *Ringwood Assocs. v. Jack's of Route 23, Inc.,* 166 *N.J.Super.* 36, 42–43, 398 *A.2d* 1315 (App.Div.1979), by Dr. Zimmerman tantamount to a statement that was evidential against him under the rule. That is "no more than an application of the general proposition that the behavior of a litigant with respect to relevant evidence may permit an inference that his behavior was prompted by a conscious appreciation that the evidence would or might be hurtful to ... his position." *State v. Council, Div. of Resource Dev.,* 60 *N.J.* 199, 202, 287 *A.2d* 713 (1972). A jury could infer from Dr. Zimmerman's behavior that he believed that Rosenblit's medical records would prejudice his position in the litigation. That belief could be significant to a jury faced with expert evidence in equipoise.

To be sure, the alteration evidence would have had a substantial impact on Dr. Zimmerman's case. But that is what happens when there is powerful and persuasive evidence. That does not mean, as Dr. Zimmerman has argued, that it should be excluded under *N.J.R.E.* 403. "In this weighing process, evidence that has overwhelming probative worth may be admitted even if highly prejudicial." *Green v. New Jersey Mfrs. Ins. Co.*, 160 *N.J.* 480, 496, 734 *A.*2d 1147 (1999). "The burden is clearly on the party urging the exclusion of evidence to convince the court that the *N.J.R.E.* 403 considerations should control." Biunno, *Current N.J. Rules of Evidence*, comment 1 on *N.J.R.E.* 403 (1999–2000). Absent extraordinary circumstances, evidence of intentional alteration or destruction of medical records by a physician accused of malpractice should not be excluded under *N.J.R.E.* 403. The mere fact that "evidence is shrouded with unsavory implications is no reason for exclusion when it is a significant part of the proof." *State v. West*, 29 *N.J.* 327, 335, 149 *A.*2d 217 (1959).

In short, Rosenblit did not receive a fair trial in the underlying malpractice action. Indeed, the importance of the alteration evidence to the jury was underscored by its large award of punitive damages to Rosenblit in the later, albeit improper, spoliation case. By that verdict, the jury effectively signaled that it would have ruled differently in the malpractice case had it been aware of Dr. Zimmerman's efforts to cover up his actions. Thus, exclusion of that evidence in the malpractice trial clearly had the potential to affect the outcome unjustly. *R.* 2:10–2.

In that respect, we specifically disagree with the Appellate Division that the alteration bore only on the issue of proximate cause that the jury never reached. On the contrary, evidence of the alteration to show constant improvement by Rosenblit was also relevant to whether Zimmerman breached the appropriate standard of care by continuing manipulations on her after she brought her claims of neck pain, nausea and ear-ringing to his attention. Malpractice could arise not only in the method of

manipulation performed by Dr. Zimmerman, but also in his continued use of that method on Rosenblit after the injury about which she complained. Consequently, the error was not harmless. We thus reverse the judgment in the malpractice action and remand that case for a new trial consonant with the evidentiary principles to which we have adverted.

## V

In sum, where an adversary has intentionally hidden or destroyed (spoliated) evidence necessary to a party's cause of action and that misdeed is uncovered in time for trial, plaintiff is entitled to a spoliation inference that the missing evidence would be unfavorable to the wrongdoer and may also amend his or her complaint to add a claim for fraudulent concealment. Where the hiding or destruction is not made known until after the underlying litigation, in which plaintiff's case has been lost or impaired due to the missing evidence, a separate tort action for fraudulent concealment will lie. In both situations, discovery sanctions also may be awarded where appropriate in light of the jury verdict.

Where, as here, Dr. Zimmerman tried to destroy Rosenblit's medical records but she was fortunate enough to obtain the original records prior to trial, neither a spoliation inference nor a separate tort action for fraudulent concealment is appropriate. Rosenblit's remedies are the introduction of evidence of Dr. Zimmerman's misdeeds before the jury at a new malpractice trial pursuant to *Rule* 803(b), along with discovery sanctions.

## VI

The judgment entered on the jury verdict for spoliation is reversed. The judgment in the malpractice action is reversed and that matter is remanded for trial.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.