**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2649-17T2

DAVID and MICHELE NAUSE,
H/W,

      Plaintiffs-Appellants,

v.

ATLANTICARE REGIONAL
MEDICAL CENTER –
MAINLAND CAMPUS, and
ATLANTICARE HEALTH
SYSTEMS, INC.,

      Defendants-Respondents.

_____

Submitted January 15, 2019 – Decided February 4, 2019

Before Judges Geiger and Firko.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0480-14.

Swartz Culleton PC, attorneys for appellants (Matthew E. Gallagher, on the briefs).

Fox Rothschild LLP, attorneys for respondents (Eric M. Wood, on the briefs).

PER CURIAM

Plaintiffs David and Michelle Nause appeal from a judgment of no cause of action in this medical malpractice action. We affirm.

Plaintiff[1] was a patient at defendant AtlantiCare Regional Medical Center – Mainland Campus (ARMC) for two weeks. He developed pressure ulcers on his heel and buttocks during his hospitalization, one of which deteriorated to stage IV. Plaintiffs allege defendants provided negligent treatment and monitoring proximately causing the development and progression of the pressure ulcers. Plaintiffs did not name the attending or treating physicians as individual defendants; they sue the hospital vicariously for the alleged negligence of its nursing staff, claiming plaintiff developed pressure ulcers as a direct result of that negligence.

Prior to trial, plaintiffs issued a notice to produce Kathleen Henry, R.N., a wound and ostomy specialist employed by ARMC, to testify at trial. Nurse Henry did not appear to testify as scheduled because she was out-of-state caring for her brother who had just suffered a stroke and was hospitalized, while at the same time her mother was ill and her sister was hospitalized with cancer.

---

[1] References to plaintiff in this opinion refer only to David Nause. His wife, Michelle Nause's claims are limited to loss of consortium.

A-2649-17T2

As a result of Nurse Henry's unavailability, plaintiffs read sections of her discovery deposition testimony to the jury. The deposition read-in did not include any cross-examination of Nurse Henry by counsel for ARMC.

While the trial was underway, plaintiffs hired a private investigator to determine if Nurse Henry was truly unavailable to testify. The investigator discovered Nurse Henry had returned to work at ARMC several days after her scheduled appearance date. Plaintiffs requested an adverse inference charge based on attempted spoliation and sought monetary sanctions for the costs incurred for the private investigator. Plaintiffs also sought to question Nurse Henry at trial about her supposed unavailability.

Plaintiffs did not allege defense counsel was at fault for Nurse Henry's non-appearance. Nor did they show that ARMC played any part in her non-appearance.

Following oral argument, the trial judge denied plaintiffs' demand for an adverse inference charge, monetary sanctions, and questioning of the nurse regarding her unavailability, noting deposition testimony had been read to the jury and she would be testifying "live for the jury to see." The judge found Nurse Henry's conduct was not "so egregious" as to warrant sanctions against

ARMC. Instead, the judge ordered Nurse Henry to appear to provide live testimony in court, which she did.

During her testimony, plaintiffs attempted to question Nurse Henry regarding the reason for her prior non-appearance. The trial judge sustained defendants' objection to that line of questioning, finding it "irrelevant as to whether or not she was available."

Two other ARMC nurses and a nursing and wound care expert also testified on behalf of plaintiffs. During cross-examination, plaintiffs' expert acknowledged plaintiff had the following medical conditions when admitted to ARMC: hypotension, diabetes, chronic obstructive pulmonary disease, morbid obesity, complex tachycardia, sepsis, hypotensive shock, and system failure. She agreed that as a result of having these conditions, plaintiff was at risk for developing skin breakdown and could develop pressure sores even if the nurses did everything right. Plaintiffs' expert was unable to testify that plaintiff would not have suffered the same skin breakdown even if everything that should have been done by ARMC's nurses had been done.

After plaintiffs rested, defendants moved for involuntary dismissal pursuant to Rule 4:37-2. The trial judge issued a lengthy oral decision denying

the motion. A nursing and wound care expert and an internal medicine expert testified on behalf of defendants.

Ultimately, the jury found ARMC was negligent, by a vote of seven to one, but that ARMC's negligence was not a proximate cause of plaintiff's injuries, by a vote of eight to zero. Accordingly, the trial court entered a judgment of no cause of action in favor of defendants. This appeal followed.

Plaintiffs argue the trial court abused its discretion by refusing to allow them to question Nurse Henry about her supposed unavailability and by denying their request for sanctions and an adverse inference charge. They seek a new trial, the imposition of sanctions, and an adverse inference charge during the retrial.

We first address the trial court's preclusion of questioning Nurse Henry about the reason for her non-appearance. Plaintiffs did not show that her non-appearance was caused, suggested, or influenced by defendants or their counsel. On the contrary, her non-appearance appears to have been the result of an out-of-state family medical emergency. On this record, such questioning had no probative value on the central issues of whether ARMC nurses deviated from the standard of care, and if so, whether such deviation proximately caused

5

plaintiff's injuries.  Nor do we perceive it would it have had significant impact on her credibility.

Trial courts are afforded broad discretion with regard to exercising control over cross-examination of a witness.  State v. Jenewicz, 193 N.J. 440, 467 (2008); see also N.J.R.E. 611 (stating "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and preventing evidence").  We discern no abuse of discretion by the trial court.  In any event, we deem the alleged error to have been harmless.  See R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.").

We next address the trial court's denial of an adverse inference charge. When a party fails to honor a notice in lieu of subpoena, they subject themselves to the list of sanctions referenced in Rule 1:2-4(a).  Gonzalez v. Safe & Sound Sec., 185 N.J. 100, 115 (2005).  With regard to failures to appear, Rule 1:2-4(a) provides in relevant part:

> If without just excuse or because of failure to give reasonable attention to the matter, no appearance is made on behalf of a party . . . on the day of trial, . . . the court may order any one or more of the following: . . . (b) the payment by the delinquent attorney or party or the party applying for the adjournment of the reasonable expenses, including attorney's fees, to the aggrieved party; (c) the . . . striking of the answer and

the entry of judgment by default . . . ; or (d) such other action as it deems appropriate.

We review the imposition or denial of sanctions for abuse of discretion. Gonzalez, 185 N.J. at 115.

One of the sanctions the court may impose is an adverse inference charge. Id. at 118. An "adverse inference is not to be utilized when the witness is unavailable." Ibid. An adverse inference charge is also inappropriate when the witness testifies. This is true because the charge is administered "during the underlying litigation as a method of evening the playing field where evidence has been hidden or destroyed." Rosenblit v. Zimmerman, 166 N.J. 391, 401 (2001). Indeed, its essential function "allows a jury in the underlying case to presume that the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to him or her." Id. at 401-02.

Here, there was no spoliation of evidence. The jury heard both Nurse Henry's discovery deposition testimony and her live testimony subject to cross examination. Plaintiffs' ability to present their case was not impaired; in fact we are persuaded this series of events inured to their benefit. Whatever value plaintiffs' perceived in Nurse Henry's testimony was presumably captured between the deposition read-in and the live testimony. In addition, plaintiffs have not shown defendants attempted to prevent or dissuade Nurse Henry from

A-2649-17T2

testifying, much less acted willfully or deliberately in disregard of the court's authority. Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 575 (2003). For these reasons, we discern no abuse of discretion by the trial court.

Last, we address the trial court's denial of monetary sanctions. "Our standard of review of the imposition of sanctions requires us to abstain from interfering with those discretionary decisions unless an injustice has been done." Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 82-83 (App. Div. 2004) (quoting Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 571 (App. Div. 2000)). While we recognize plaintiffs incurred some expense hiring a private investigator to determine if Nurse Henry was available to testify, the circumstances militated against awarding monetary sanctions.[2] As we have indicated, defendants did not bring about or encourage Nurse Henry's initial non-appearance. Plaintiffs did not demonstrate defendants deliberately violated any court rule or court order or otherwise acted in bad faith. The trial judge's ruling requiring Nurse Henry to appear prevented plaintiffs from suffering any prejudice or injustice. We therefore conclude the denial of monetary sanctions was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] The record does not reflect the cost incurred for the private investigator.

A-2649-17T2