**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2811-23

JASON GONTER,

     Plaintiff-Appellant,

v.

SYLVIA A. DAWSON,

     Defendant-Respondent.

_____

Argued September 18, 2025 – Decided October 1, 2025

Before Judges Mawla, Marczyk, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3493-21.

Bruce A. Wallace, III (Law Office of Bruce A. Wallace, LLC) argued the cause for appellant.

Brandon R. Cohen argued the cause for respondent (Goldberg, Miller & Rubin, PC, attorneys; Brandon R. Cohen, on the brief).

PER CURIAM

Plaintiff Jason Gonter appeals from the April 10, 2024 judgment of no cause entered following a jury trial in his suit against defendant Sylvia Dawson, where he alleged he was negligently injured in a motor vehicle pedestrian accident. He contests the court's finding that he spoliated evidence by failing to preserve Ring camera footage, as well as the court's decision to issue an adverse inference charge and prohibit him from testifying about the contents of the missing footage and why he failed to preserve the video. Having reviewed the arguments in light of the record and applicable law, we affirm.

I.

On November 15, 2019, plaintiff was using a leaf blower backpack in the street in front of his home when he was struck by defendant's vehicle. Plaintiff alleged he sustained bodily injuries caused by defendant's negligence. Defendant did not dispute the passenger side mirror of her vehicle came into contact with plaintiff or his leaf blower. However, she claimed plaintiff caused the accident when he "stepped back" toward her vehicle as she drove past him. Plaintiff's wife took several photos of defendant's vehicle and plaintiff's leaf blower following the accident. Plaintiff sought medical treatment that same day.

In December 2019, plaintiff's prior counsel sent a letter of representation to defendant's insurance carrier regarding plaintiff's intent to "make a claim"

2

against defendant for the injuries he sustained in the accident. Plaintiff filed his complaint in November 2021.

In July 2022, plaintiff failed to disclose the existence of the Ring camera footage in response to Form A interrogatories. In November 2022, plaintiff was deposed and revealed for the first time that his home's Ring camera had recorded at least part of the incident. Specifically, plaintiff was asked if he fell down after being struck by defendant's vehicle. He responded, "[n]o, I stumbled. We had it on . . . I'm not sure if it still exists. My wife has the Ring doorbell[ camera,] and we looked at it . . . shortly thereafter, and I was stumbling around in a circle." Plaintiff explained his wife had the footage on her cell phone at the time, and he had viewed it within three days of the accident, but the footage had not been saved because it was overwritten.

Defendant subsequently served a demand for supplemental discovery, requesting the photographs taken by plaintiff's wife after the accident and the Ring camera footage of the accident. Plaintiff produced photographs of defendant's vehicle and his leaf blower from the day of the accident but did not provide the Ring camera footage.

Defendant then moved to compel the Ring camera footage. Thereafter, plaintiff provided written answers to the supplemental interrogatories regarding

3

the Ring camera footage.  Plaintiff stated he was "unable" to produce the footage in question because he did not "have access" to it.  He also explained he "never viewed footage capturing the subject accident."  He also stated he never made any efforts to save the Ring camera footage.

Defendant subsequently moved to dismiss plaintiff's complaint pursuant to Rule 4:23-2(b)(3), asserting plaintiff spoliated evidence based on his failure to preserve the Ring camera footage.  Plaintiff opposed the motion and certified his residence was equipped with the Ring camera, but the Ring system was "set up and controlled" by his wife.  He stated he "never had any knowledge as to what the Ring account number, username, or password were," and that he "never had access" to the Ring camera footage "except with the consent" of his wife.

Plaintiff further noted he was going through a divorce.  He claimed he "could not have saved or retained" the Ring camera footage unilaterally.  His counsel argued, because of the contentious divorce, "[plaintiff]'s position is [his] wife can corroborate the fact that the accident was not captured on the [Ring camera footage], [but she] has not been cooperative with [counsel] in order for [counsel] to get that information."  Regardless, he certified he viewed the Ring camera footage but "[i]t did not show the actual accident" because it "took place outside of the viewing area of the [Ring] camera."

4

Following oral argument, the court opined:

> The bottom line is [plaintiff] . . . stated that [the Ring camera footage] did show him after the accident. It showed him standing where he claims the accident occurred. But miraculously, he claims that it never . . . capture[d] the accident. . . .
>
> . . . .
>
> . . . [H]e does claim that [the Ring camera] captured him walking around after[ the accident].
>
> . . . .
>
> . . . So it does show something, and he just didn't think it was important until three years later. Well, obviously three years later we weren't going to be able to ever get it, whether it's his wife's account or his account. It doesn't make any difference, because three years later he's not going to have it. . . .
>
> And interestingly, . . . [plaintiff and his wife] knew they needed the pictures. Why didn't they keep the Ring [camera footage]? Well, there's a reason why they didn't . . . .

After plaintiff's counsel interjected that plaintiff did not recall the photos of the leaf blower existed until his wife reminded him during the course of discovery, the court continued:

> [Plaintiff] knew [the photos existed] because she took them right there. She took it right there on that day. They [also] reviewed the Ring camera [footage] together. They were together at that time. She was involved at that time. She took pictures at that time. . . .

5

A-2811-23

[H]e went to the emergency room. They knew they were putting together a case.

I think it's pretty clear that he didn't want to keep that video . . . . He had a duty to keep that video, and he didn't. . . .

. . . .

So . . . looking at th[e] four-prong test[ for evaluating spoliation claims] . . . [n]umber one, . . . I do think that he did have the duty to keep the evidence. Clearly the evidence is material. . . .

. . . He knew this was relevant. And clearly it is relevant, because the case hinges on one person's word against the other, so clearly the [Ring camera footage] would have been important.

I don't know that he intentionally withheld it. I can't find that. But certainly he negligently did, and arguably he intentionally did. . . .

He looked at the tape, and he probably said[,] ["O]h, this might not be good for me. I'm not going to worry about this tape.["] He didn't even bring it up for three years.

I think . . . clearly it's prejudicial . . . to the defense, because she never got a chance to see it at all. He saw it and . . . decided he wasn't going to use it . . . .

. . . [I]t's very problematic. . . . I'm going to find that it's negligent and not intentional, because if it's intentional clearly I'm going to have to dismiss the complaint.

A-2811-23

> I find some of [plaintiff's] arguments that well, ["M]y wife is not cooperative, I'm sorry I can't help you,["] to be ridiculous. I also find that the Ring [camera footage] captured just [plaintiff] walking around afterwards, so [he] didn't think it was important, also to be spurious. . . . It's not reasonable.

The court did not dismiss the complaint, but proceeded to address the appropriate sanction under the circumstances. It noted that in the case of spoliation in the circumstances presented, the only way to make the impaired party whole was "to have an adverse charge . . . against . . . plaintiff, that . . . there was a videotape, and that he didn't . . . preserve it, and that . . . the jury . . . can determine that there is an inference that it wasn't beneficial to him. . . . They don't have to, but they can. . . ." The court entered an accompanying order denying defendant's motion to dismiss, noting instead, "[a]n adverse charge regarding spoliation against [p]laintiff will be read to the jury."

The parties proceeded to trial in April 2024. During pre-trial proceedings, defense counsel asked for clarification on what, if anything, plaintiff would be allowed to testify about the now-lost Ring camera footage. The court explained it was not going to permit testimony about what the camera footage did or did not show, when plaintiff saw the footage, and why he did not provide it, because it was not provided to the defense.

The trial proceeded, and plaintiff testified on direct examination without mentioning the Ring camera footage. On cross-examination, the following colloquy took place between defendant's counsel and plaintiff:

> Q: . . . I heard you mention it earlier, I know you and I have talked about it before, within a few days of the accident, you had looked at footage from the Ring doorbell on your front door, correct?
>
> A: Yes, sir.
>
> . . . .
>
> Q: Okay. And after you reviewed that footage, you didn't save the footage, correct?
>
> A: It wouldn't be mine to save.
>
> Q: Okay. You looked at it?
>
> A: I viewed it on my wife's cell phone, yes, sir.
>
> Q: Okay. Could have asked her to save it, right?
>
> A: I've never been involved in a personal injury case, so I don't know the protocol and I would have never thought to do that. . . . [H]er phone's hard drive went on her cell phone, so the image was lost . . . . It wasn't on my phone, I did not have the Ring [camera footage].
>
> Q: . . . [W]hen you reviewed it, you didn't save it to your phone or your computer, correct?
>
> A: I did not.

A-2811-23

. . . .

Q: . . . [Y]ou didn't ask her if you could save it . . . correct?

A: I would have had no reason to.

At the close of plaintiff's case, the court provided the following adverse inference charge:

> You did hear some testimony from . . . plaintiff regarding a Ring doorbell video and that is relevant to the matter before you. . . . [P]laintiff has failed to maintain the video and therefore won't have it here for you.
>
> Under these circumstances you have the right to infer that the video, had it been produced, would have been adverse to the interest of . . . plaintiff. And that's what's called an adverse inference . . . .

During summations, plaintiff's counsel noted plaintiff "said that the [footage] was on his wife's phone, and there had been a malfunction of the phone." Counsel then argued as follows: "There's no evidence in this case that the accident was captured in the [footage]. [Defense counsel] could have asked [plaintiff] about that but he didn't." Defendant's counsel objected, the court clarified plaintiff's counsel could not "talk about what was on [the footage] because we don't know what's on there," and plaintiff was not "allowed to testify

9

as to what was on it."  The court proceeded to instruct the jury that prior to the trial it had determined there would be no testimony as to what was on the video.

The jury returned a verdict in favor of defendant, finding she was not negligent.  The court entered an order for judgment of no cause on April 10, 2024.

II.

On appeal, plaintiff argues the trial court abused its discretion by giving an adverse inference charge regarding spoliation of evidence.  He further contends the court abused its discretion by prohibiting him from offering testimony about what the footage depicted and why it was not preserved.

"The existence of a duty to preserve evidence is a question of law to be determined by the court."  Cockerline v. Menendez, 411 N.J. Super. 596, 620 (App. Div. 2010).  Thus, our review of whether a duty exists is de novo.  Lanzo v. Cyprus Amax Mins. Co., 467 N.J. Super. 476, 521 (App. Div. 2021).

The trial court can address spoliation of evidence issues by giving a jury charge of adverse inference.  See Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 472 (App. Div. 2012).  "The selection of the appropriate sanction is left to the trial court's discretion and will not be disturbed

A-2811-23

if it is 'just and reasonable in the circumstances.'" Cockerline, 411 N.J. Super. at 620-21 (citation omitted).

"A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)) (internal quotation marks omitted). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." R.Y., 242 N.J. at 65 (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Expo. Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

## A.

Plaintiff asserts the "elements necessary to establish [his] duty . . . to preserve the [Ring camera footage] are not present in this case." He argues: the court found his failure to preserve the video was not intentional, only negligent; "there was a lack of foreseeability of harm to . . . defendant, because the video

11

did not show the actual contact between defendant's vehicle and plaintiff," and thus "there was no value or relevance to the video"; defendant was not prejudiced or irreparably deprived of a meaningful ability to present her defense because defendant "testif[ied] as to her version of the . . . accident"; and plaintiff "neither controlled, owned, possessed nor otherwise had authority over the evidence."

"Spoliation typically refers to the destruction or concealment of evidence by one party to impede the ability of another party to litigate a case." Jerista v. Murray, 185 N.J. 175, 201 (2005). A duty to preserve evidence "arises where there is: (1) pending or probable litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of litigation; (3) foreseeability of harm to the defendants, or in other words, discarding the evidence would be prejudicial to defendants; and (4) evidence relevant to the litigation." Aetna Life & Cas. Co. v. Imet Mason Contractors, 309 N.J. Super. 358, 366 (App. Div. 1998) (quoting Hirsch v. Gen. Motors Corp., 266 N.J. Super. 222, 250 (Law Div. 1993)). "In civil litigation, depending on the circumstances, spoliation of evidence can result in a separate tort action for fraudulent concealment, discovery sanctions, or an adverse trial inference against the party that caused the loss of evidence." Jerista, 185 N.J. at 201-02.

12

"Although spoliation most often arises in the context of destroyed evidence, it is equally applicable to situations where evidence has been concealed or materially altered." Bldg. Materials Corp., 424 N.J. Super. at 474. "The key in any situation is the effect the spoliator's actions had on the aggrieved party's ability to present its case." Ibid. In other words, the non-spoliating party must demonstrate the spoliated evidence was "necessary to [the] party's cause of action." Rosenblit v. Zimmerman, 166 N.J. 391, 411 (2001). "The purpose of an adverse inference instruction is to level 'the playing field where evidence has been hidden or destroyed.'" Lanzo, 467 N.J. Super. at 519-20 (quoting Rosenblit, 166 N.J. at 401).

The choice of remedy for spoliation is left to the sound discretion of the court, upon consideration of several factors. See Robertet Flavors, Inc. v. Tri-Form Constr., Inc., 203 N.J. 252, 282, 284 (2010). They include the spoliator's identity and degree of fault; the timing of the spoliation's discovery; the resultant prejudice; and the availability of lesser sanctions that will serve to "avoid unfairness to the non-spoliator," "make [the non-spoliator] whole, as nearly as possible," "punish the wrongdoer," and "deter others from such conduct." Lanzo, 467 N.J. Super. at 526 (quoting Robertet Flavors, Inc., 203 N.J. at 272-73, 278).

A-2811-23

A common spoliation remedy is an adverse inference, which "allows [the fact-finder] in the underlying case to presume . . . the evidence the spoliator destroyed or otherwise concealed would have been unfavorable to him or her." Rosenblit, 166 N.J. at 401-02. Another "is the discovery sanction" under Rule 4:23-4, which permits a court to impose various sanctions based on a party's failure to comply with a discovery obligation, including "order[ing] that designated facts be taken as established, refus[ing] to permit the disobedient party to support or oppose designated claims or defenses, prohibit[ing] the introduction of designated matters into evidence, dismiss[ing] an action, or enter[ing] judgment by default." Id. at 402-03.

Our Supreme Court has explained that a sanction like dismissal of a cause of action is a "harsh and draconian remedy" for spoliation, is to be imposed "only sparingly," and "will normally be ordered only when no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party." Robertet Flavors, Inc., 203 N.J. at 274; see also Aetna, 309 N.J. Super. at 369 ("[T]he ultimate sanction of dismissal should be a remedy of last resort."). The intent of the spoliator "does not affect the spoliator's liability . . . because the focus is on erasing the prejudice suffered by the opposing party." Lanzo, 467 N.J. Super. at 527 (citation and internal quotation marks omitted).

We first conclude the court did not err in finding plaintiff had a duty to preserve the Ring camera footage. The court appropriately addressed the four factors in Aetna. As to the first two factors, plaintiff knew shortly after the accident he would pursue litigation. He sought medical treatment at an urgent care facility the day of the accident, and his wife photographed defendant's vehicle and the leaf blower. Plaintiff also retained counsel less than a month after the accident.

As to the third Aetna factor, we determine the court properly found plaintiff knew the Ring camera footage was relevant to any potential claim. He stated at his deposition, "[w]e had it on . . . I'm not sure if it still exists. My wife has the Ring [camera footage], and we looked at it . . . shortly thereafter, and I was stumbling around in a circle." Although he later certified the footage did not capture defendant's vehicle striking him, the surveillance video would have still been relevant as to damages with respect to plaintiff's status after the accident. It also would have been the only objective evidence of the accident, or, at the very least, the aftermath of the accident. The court properly determined the absence of the Ring camera footage clearly prejudiced defendant, as she was not able to view the footage and determine whether it captured the accident or

15

the significance of the post-accident footage showing plaintiff purportedly stumbling around.

Under the fourth factor, the court did not err in finding it should have been evident to plaintiff the Ring camera footage was relevant and defendant would be prejudiced by its destruction. The footage was the only contemporaneous documentation of the incident, and it could have been anticipated there would be credibility issues as to who caused the accident and the extent of plaintiff's injuries. The Ring camera footage would have provided some context for the jury to evaluate the conflicting testimony in this matter. Regarding plaintiff's contention he did not have access to the video because it was on his wife's phone, he provides no reasonable explanation as to why his wife was willing to give him the photos she took at the scene but not the Ring camera footage from her phone. While the parties later went through a divorce, that did not excuse plaintiff from the obligation to obtain and preserve the video around the time of the incident.

The court appropriately rejected plaintiff's representation that the Ring camera footage did not show the accident because to do so would subvert the purpose of an adverse inference spoliation charge. It recognized it could not confirm plaintiff's assertion that the accident was not captured on the video

16

because plaintiff failed to save it. The trial court did not err in finding the Ring camera footage was relevant and that plaintiff had a duty to preserve it.

The trial court also properly exercised its discretion in finding the adverse inference charge was the appropriate remedy to address any prejudice to defendant based on the missing footage. We affirm substantially for the reasons set forth in its oral opinion denying the motion to dismiss but imposing an adverse inference. The court determined a dismissal was not warranted under the circumstances because plaintiff's actions were not intentional.

Given its finding that plaintiff negligently failed to preserve the evidence, the court could have considered other discovery sanctions under Rule 4:23-4, which would have included refusing to permit plaintiff to support his claim or prohibiting the introduction of designated matters into evidence. Rosenblit, 166 N.J. at 402-03. Instead, the court determined the appropriate remedy was an adverse inference charge. We discern no error in the court's reasoning.

B.

We next address plaintiff's argument that even if the adverse inference charge was appropriate, the trial court abused its discretion in not allowing him to testify concerning what the Ring camera footage showed. He asserts "the only reasonable conclusion as to why the jury returned a verdict that . . .

17

defendant was not negligent at all is due to the adverse inference charge." Plaintiff relies on Davis v. Barkaszi, 424 N.J. Super. 129 (App. Div. 2012), and Nerney v. Garden State Hospital, 229 N.J. Super. 37 (App. Div. 1988), in support of his argument that the court should have permitted him to testify regarding the failure to preserve the Ring camera footage. We are unpersuaded by plaintiff's contentions.

In Davis, the plaintiff alleged the defendant negligently served alcohol to the co-defendant, which ultimately resulted in an automobile accident with the plaintiff. 424 N.J. Super. at 135. The defendant had a video system that automatically recorded over previous footage once a week and "did not allow for image preservation." Id. at 137. He learned of the accident prior to the footage being overwritten and viewed the footage, but argued he did not save the footage because he "saw nothing on the [footage] to contradict [the plaintiff]'s account of the evening, and so he did not think he would be sued, and therefore did not need to save the footage." Id. at 138.

The trial court instructed the jury that the defendant spoliated video surveillance from the bar on the night in question and thus, provided an adverse inference charge. See id. at 135-36. The court not only gave the adverse inference charge, but also "precluded [the defendant] from testifying as to what

he saw on the [footage] and from explaining why he did not attempt to preserve the footage." Ibid.

We reversed, finding the adverse inference charge was given in error because the plaintiff failed to show the defendant had improperly destroyed the evidence, see id. at 148, as the defendant "had no reason to know that [the] plaintiff would bring suit . . . before the video camera automatically taped over the footage from the night of the accident," id. at 147. The court also noted the defendant did not have a policy of saving video upon the happening of an incident and was not notified of the litigation "until over a year after the accident." Id. at 149-50.

We also determined the trial court erred in precluding the defendant from testifying as to the contents of the footage, stating the adverse inference charge was:

> particularly harmful because the [trial] judge did not allow the jury to hear testimony concerning the reasons why [the defendant] chose not to preserve the footage. Rather, the jury was permitted to make the adverse inference regarding spoliation without hearing from [the defendant] that the surveillance footage supported the defense position that [the co-defendant] was not served alcohol after he was visibly intoxicated. We understand the [trial] judge's reluctance to allow [the defendant] to benefit from its failure to preserve the footage by offering unrebuttable testimony as to its content. Under these circumstances, however, the more

19

> proper course would be not to charge spoliation and disallow any reference to the video surveillance.

> [Id. at 148-49.]

Here, the trial court did not abuse its discretion in preventing plaintiff from testifying regarding the contents of the Ring camera footage. Davis is distinguishable because we concluded the alleged spoliator in that case did not have notice of the lawsuit until over a year after the accident, and thus "had no reason to know" a lawsuit was likely, and therefore, had no duty to preserve the video. Id. at 146-47. Unlike Davis, we conclude the trial court properly determined plaintiff had a duty to preserve the video here, given his knowledge shortly after the accident that he intended to pursue litigation.

In Nerney, the plaintiff injured his wrist and sued the defendant for negligently failing to diagnose a fracture. 229 N.J. Super. at 38. The defendant reviewed the plaintiff's x-rays, which were subsequently sent to the plaintiff's doctor for review. Id. at 38-39. However, the plaintiff's expert lost the x-rays, and thus the defendant was "deprived of the opportunity to have an expert review the [x]-rays." Id. at 39. The trial court granted the defendant's "motion to preclude [the] plaintiff from presenting testimony regarding the contents of the misplaced [x]-rays." Ibid. It also subsequently granted the defendant's motion for summary judgment, as the absence of the x-rays or testimony regarding their

20

contents prevented the plaintiff from proving the defendant deviated from accepted standards of care.  See ibid.

On appeal, we reversed and remanded, finding the record "d[id] not justify the exclusion of testimony regarding the contents of the misplaced [x]-rays." Ibid.  We noted, "testimony regarding evidence which a party has negligently lost should be barred only if substantial prejudice to the other party would result . . . . [A] party who has negligently lost evidence should be given his day in court unless the other party would suffer undue prejudice." Id. at 40.  A remand was necessary because the record "did not provide an adequate basis for a fully informed determination as to whether [the defendant] would be substantially prejudiced," as the defendant offered nothing more than merely asserting prejudice existed, and did not provide reasoning "as to the significance of the absence of the [x]-rays." Id. at 42.

As with Davis, our decision in Nerney is also distinguishable.  There, a third party, not the plaintiff, lost the x-rays. Id. at 39.  Moreover, the defendant in Nerney had an opportunity to review the x-rays prior to them being lost, and the record was silent as to whether the defendant consulted with an expert to review the films prior to them being lost. Id. at 41-42.  Conversely, defendant here never had an opportunity to review the Ring camera footage at all.  The

21

trial court found the Ring camera footage would have been "clearly . . . prejudicial" to defendant as "she never got a chance to see it." Thus, the court determined defendant demonstrated she would be substantially prejudiced if plaintiff had been permitted to testify as to the contents of the Ring camera footage and why it was not saved.

More fundamentally, plaintiff was given his day in court—unlike the plaintiff in Nerney—because the trial court did not impose the draconian measure of dismissing his complaint. Rather, the court allowed plaintiff's claim to proceed to trial and tailored an appropriate remedy to address the prejudice to defendant by utilizing an adverse inference spoliation charge and preventing plaintiff from testifying about the contents of the destroyed Ring camera footage. The trial court's measured approach in not dismissing plaintiff's claim, but opting for an adverse inference charge and limiting plaintiff's testimony, was sound under the facts. In Nerney, we noted, "a party to civil litigation who negligently loses evidence may be barred from presenting testimony regarding that evidence." Id. at 40. Under the circumstances presented here, the court did not misapply its discretion by precluding plaintiff from testifying regarding the contents of the video he failed to preserve and the reasons he failed to maintain the video.

22

The remedy for spoliation employed by the trial court is left to its sound discretion considering, among other factors, the spoliator's degree of fault, resulting prejudice to the adverse party, the availability of lesser sanctions that will avoid unfairness to the non-spoliator, and making the non-spoliator whole. See Robertet Flavors, Inc., 203 N.J. at 278; Lanzo, 467 N.J. Super. at 526. Measured against these principles, we discern no misapplication of the court's discretion in this matter.

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division